DETROIT POLICE OFFICERS ASSOCIATION v CITY OF DETROIT

1. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—COLLECT-
    IVE BARGAINING—MANDATORY SUBJECTS—REFUSAL TO BARGAIN
    —UNFAIR LABOR PRACTICES.

    The public employment relations act requires a public employer
    to bargain collectively with its employees' representative with
    respect to "wages, hours, and other terms and conditions of
    employment"; subjects which fall within the scope of the quoted
    phrase are mandatory subjects of collective bargaining and
    refusal to bargain about mandatory subjects constitutes an
    unfair labor practice (MCLA 423.210[e], 423.215).

2. LABOR RELATIONS—PUBLIC EMPLOYEES RELATIONS ACT—NATIONAL
    LABOR RELATIONS ACT—TERMS OF EMPLOYMENT—STRIKES BY
    PUBLIC EMPLOYEES.

    The phrase "terms and conditions of employment" in the public
    employment relations act must be construed even more expan-
    sively than the identical language in the National Labor Rela-
    tions Act because public employees in Michigan are forbidden
    to strike; courts must utilize a case-by-case approach in deter-
    mining whether a given subject involves a term and condition
    of employment. (29 USC 158[d]; MCLA 423.215).

3. LABOR RELATIONS—COLLECTIVE BARGAINING—MANDATORY SUB-
    JECTS.

    A subject is appropriate for mandatory collective bargaining
    where the subject has a material or significant impact upon
    wages, hours, or other conditions of employment, or where the
    subject settles an aspect of the relationship between the em-
    ployer and employees; management decisions which are funda-
    mental to the basic direction of a corporate enterprise or which
    impinge only indirectly upon employment security should not
    be subjects of mandatory collective bargaining.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–6] 48 Am Jur 2d, Labor and Labor Relations § 695.
[2] 48 Am Jur 2d, Labor and Labor Relations § 1194.

4. LABOR RELATIONS—COLLECTIVE BARGAINING—MANDATORY SUBJECTS —POLICEMEN—STANDARDS FOR PROMOTION.

Standards and criteria for promotion of patrolmen and policewomen are "terms and conditions of employment" under the public employment relations act and a mandatory subject of collective bargaining between the City of Detroit and the Detroit Police Officers Association.

5. LABOR RELATIONS—COLLECTIVE BARGAINING—BARGAINING UNITS— NON-UNIT EMPLOYEES—TERMS OF EMPLOYMENT.

A bargaining unit is generally forbidden from bargaining about another unit's terms and conditions of employment; however, in limited circumstances an employer will be required to bargain with a unit representative about a subject which concerns non-unit employees where the concern of the non-unit employees vitally affects the terms and conditions of the employment of the unit members.

6. LABOR RELATIONS—COLLECTIVE BARGAINING—MANDATORY SUBJECTS —BARGAINING UNITS—POLICEMEN—SUPERVISORY OFFICERS.

Standards and criteria for promotion of members of the Detroit Police Officers Association are a mandatory subject of bargaining between the association and the City of Detroit because the subject vitally affects the association members' employment, even though the association does not represent the sergeants and other supervisory officers whose qualifications would be the subject of discussion.

Appeal from the Employment Relations Commission. Submitted Division 1 January 15, 1975, at Detroit. (Docket No. 20926.) Decided May 30, 1975. Leave to appeal denied, 395 Mich —.

Complaint by Detroit Police Officers Association against the City of Detroit before the Employment Relations Commission alleging an unfair labor practice. Defendant appeals from an order in favor of plaintiff. The commission cross-appeals. Affirmed.

*Gregory, Van Lopik & Higle* (by *J. Douglas Korney),* for plaintiff.

*Elliott S. Hall,* Corporation Counsel, and *Ronald Zajac, Frank W. Jackson,* and *Michael A. Hurvitz,* Assistants Corporation Counsel, for defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for the Employment Relations Commission.

Before: R. B. BURNS, P. J., and BRONSON and M. F. CAVANAGH, JJ.

BRONSON, J. This case is on appeal from the Michigan Employment Relations Commission (MERC).[1] Appellant City of Detroit (City) was found by MERC to have engaged in an unfair labor practice[2] in refusing to bargain collectively with appellee Detroit Police Officers Association (DPOA) regarding the standards and criteria used by the police commissioner[3] in determining promotions for members of the bargaining unit.

 The City is a public employer and members of the DPOA are public employees as those terms are used in the public employment relations act (PERA), MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* The DPOA has since 1966 been recognized as the exclusive bargaining agent for the City's patrolmen and policewomen. MCLA 423.211; MSA 17.455(11). Section 15 of PERA[4] requires a public employer to bargain collectively with its employees' representative "with respect to wages, hours, and other terms and conditions of employment". Subjects which fall within the scope of the

---

[1] The appeal is by right. *Michigan Employment Relations Commission v Reeths-Puffer School District,* 391 Mich 253, 270, fn 23; 215 NW2d 672 (1974).

[2] MCLA 423.210, 423.216; MSA 17.455(10), 17.455(16).

[3] Now chief of police, Detroit Charter, art 7, chap 11, § 6.

[4] MCLA 423.215; MSA 17.455(15).

quoted phrase are mandatory subjects of collective bargaining, and refusal to bargain about mandatory subjects constitutes an unfair labor practice under section 10(e) of PERA.[5] See *Detroit Police Officers Association v Detroit,* 391 Mich 44, 52–57; 214 NW2d 803 (1974).

MERC determined that the issue of the standards and criteria used in promoting unit members is a mandatory subject of bargaining. The City disputes that ruling, arguing in addition that even if a mandatory subject is involved, the DPOA is not the proper bargaining unit with which to discuss the question of promotional standards and criteria, because the DPOA does not represent those officers to whose ranks the DPOA members are promoted.

## I.

In order to determine whether MERC was correct in concluding that the DPOA sought to bargain about a mandatory subject, we must construe the phrase "terms and conditions of employment" as used in section 15 of PERA. We have been authorized to look to Federal precedent to assist us in that task, *Detroit Police Officers Association v Detroit, supra,* at 53, and accordingly we turn to Federal case law construing the identical language in section 8(d) of the National Labor Relations Act[6] (NLRA).

That section "does not immutably fix a list of subjects for mandatory bargaining", *Allied Chemical & Alkali Workers v Pittsburgh Plate Glass Co,* 404 US 157, 178; 92 S Ct 383; 30 L Ed 2d 341 (1971); instead, courts must utilize a case-by-case

---

[5] MCLA 423.210(e); MSA 17.455(10)(e).

[6] 61 Stat 142 (1947), 29 USC 158(d).

approach in determining whether a given subject involves a "term and condition of employment". *International Union, United Automobile Aerospace & Agricultural Implement Workers of America, UAW v National Labor Relations Board,* 152 US App DC 274; 470 F2d 422, 424 (1972). In construing that phrase for purposes of PERA, we must keep in mind that because public employees in Michigan are forbidden to strike,[7] "section 15 of PERA must be even more expansively construed than its NLRA counterpart" in order to adequately protect public employees' rights. *Van Buren Public School District v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975).

We must also recognize that the classification of bargaining subjects as "terms and conditions of employment" is a matter concerning which the agency created to deal with such issues—here MERC—has special competence. *Allied Chemical Workers, supra,* at 182.

Before a subject can be considered a mandatory subject of collective bargaining, it must concern a "term and condition of employment". It is clear that promotional standards and criteria are literally "terms and conditions of employment". One of the conditions under which police officers work is the procedure established to mark the progress of their careers. This procedure affects the manner in which officers perform their duties in an important way. The extent to which promotion is possible and the performance required to obtain promotion will in large part determine how the job is done and thus constitutes one of the conditions of employment for DPOA members.

However, establishing that promotional criteria are a condition of employment is not enough to

---

[7] MCLA 423.202; MSA 17.455(2).

make that subject a mandatory one under section 15. It must also be important enough to justify resorting to "the mediatory influence of negotiation". *Fibreboard Paper Products Corp v National Labor Relations Board,* 379 US 203, 211; 85 S Ct 398; 13 L Ed 2d 233 (1964). Various "tests" have been developed by the Federal courts for determining whether a given subject is important enough to be considered a "term and condition of employment". The most popular is aptly stated in *Westinghouse Electric Corp v National Labor Relations Board,* 387 F2d 542, 547 (CA 4, 1967): " * * * those subjects which have a material or significant impact upon wages, hours, or other conditions of employment" are mandatory subjects of collective bargaining. Another test appears in *Allied Chemical Workers, supra,* at 178. An issue is a subject of mandatory bargaining if it "settle[s] an aspect of the relationship between the employer and employees".

Still another way of deciding whether a given subject should be considered appropriate for mandatory collective bargaining was formulated by Justice Stewart in his concurring opinion in *Fibreboard, supra,* at 223:

"the purpose of section 8(d) is to describe a limited area subject to the duty of collective bargaining, those management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security should be excluded from that area."

The subject of promotional standards and criteria satisfies all of these tests. The standards by which promotions are determined have a very material and significant impact upon the conditions under which and the way in which unit work

is performed. This subject is at least as important as "hourly rates of pay, overtime pay, shift differentials, holiday pay, pensions, no-strike clauses, profit sharing plans, rental of company houses, grievance procedures, sick leave, work-rules, seniority and promotion, compulsory retirement age, and management rights clauses",[8] listed by our Supreme Court as examples of mandatory subjects of bargaining. In *National Labor Relations Board v Century Cement Co,* 208 F2d 84 (CA 2, 1953), it was held that promotions based on seniority were a "term and condition of employment" and consequently a mandatory subject of bargaining. A subject must be insignificant indeed to be considered under section 8(d) only a permissive subject of bargaining.[9]

The subject of promotional criteria also falls within the scope of the definition set forth in *Allied Chemical Workers, supra.* One aspect of the relationship between the City and the DPOA members is surely the conditions under which unit members are entitled to promotions. Bargaining on that subject, if successful, will settle what is clearly one important aspect of the relationship between the parties.

Finally, the subject of promotional criteria fits comfortably within Justice Stewart's formulation. The decision concerning the factors to consider in granting promotions and the weight to be given each factor is not fundamental to the basic direc-

---

[8] *Detroit Police Officers Association, supra,* at 55.

[9] *See, e.g., Westinghouse, supra* (small price increase in cafeteria); *McCall Corp v National Labor Relations Board,* 432 F2d 187 (CA 4, 1970) (price increase in vending machine items); *Seattle First National Bank v National Labor Relations Board,* 444 F2d 30 (CA 9, 1971) (discontinuance of free investment services for bank employees); *National Labor Relations Board v Detroit Resilient Floor Decorators Local No. 2265,* 317 F2d 269 (CA 6, 1963) (employer contributions to industry promotional fund).

tion of a police department. Management prerogative is not threatened by allowing the DPOA some input on the subject of promotions. Fundamental police department policy is not undermined by a decision granting unit members the right to bargain about the conditions under which they will be allowed to rise in the ranks of the profession of their choice. By the same token, a subject of such importance to unit members impinges very directly on their employment security, and therefore falls within the limits set by section 8(d) of the NLRA and section 15 of PERA.

For the reasons outlined above, we conclude that MERC did not err in holding that the standards and criteria for promotion are "terms and conditions of employment" under section 15 of PERA and a mandatory subject of collective bargaining.

## II.

The City's other[10] contention is that the DPOA is not the proper bargaining unit to negotiate about promotional criteria, because the DPOA does not represent those employees who are the beneficiaries of the promotions and whose qualifications would be the subject of discussion.

It is undisputed that the sergeants and other supervisory officers to whose positions the DPOA members aspire are outside of the DPOA members' bargaining unit. It is generally held that one bargaining unit is forbidden from bargaining about another unit's "terms and conditions of employment". *United Mine Workers of America v Pennington,* 381 US 657, 666; 85 S Ct 1585; 14 L Ed 2d

---

[10] A third issue, raised for the first time on appeal, will not be considered further. MCLA 423.216(d); MSA 17.455(16)(d) ("[n]o objection that has not been urged before the board * * * shall be considered by the court * * * ").

626 (1965), *Sperry Systems Management Division, Sperry Rand Corp v National Labor Relations Board,* 492 F2d 63, 68 (CA 2, 1974). Employees have a right to organize collectively and choose a bargaining agent to represent them.[11] That right, and the corresponding right to forgo collective bargaining altogether, must be protected. *Allied Chemical Workers, supra,* at 172; *Sperry Rand, supra,* at 69. The City argues that the DPOA infringes on the rights of non-unit supervisory employees in insisting on bargaining about promotional standards.

The rule forbidding unions from bargaining about non-unit employees' conditions of employment is not absolute, however. In limited circumstances, an employer will be required to bargain with a unit representative about a subject which concerns non-unit employees. *Local 24, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO v Oliver,* 358 US 283; 79 S Ct 297; 3 L Ed 2d 312 (1959). The operative definition was most recently stated in *Allied Chemical Workers, supra,* at 179:

> "[I]n each case the question is not whether the third-party concern is antagonistic to or compatible with the interests of bargaining-unit employees, but whether it *vitally affects* the 'terms and conditions' of their employment." (Emphasis supplied.)

In *Oliver* the Supreme Court ordered common carrier employers to bargain with the Teamsters Union over the minimum rental that the carriers had to pay for non-union owner-operated carrier-leased trucks. Even though the subject concerned non-unit employees, it was deemed a mandatory subject of bargaining. The Court concluded that

---

[11] For public employees in Michigan, MCLA 423.209; MSA 17.455(9).

the establishment of a minimum rental for non-unit drivers was integral to the maintenance of a stable wage structure for unit members. See *United States v Drum,* 368 US 370, 382–383, fn 26; 82 S Ct 408; 7 L Ed 2d 360 (1962).

There is no doubt that promotional standards and criteria "vitally affect" the terms and conditions of employment for DPOA members. In a profession dedicated to the pursuit of excellence, promotion—an important indicator of successful striving—is a crucial motivating force. The factors to be considered in the establishment of a promotional list and the weight to be given to such factors are matters of serious concern to police officers. We agree completely with the administrative law judge's conclusion on this issue:

"The union does not question the rights and responsibilities given to the commissioner by the city charter to make promotions, but it desires an opportunity to discuss with the city the factors that will be considered in making promotions and what weight will be given to such factors. * * * Suffice it to say, members of the union's bargaining unit have a vital and continuing interest in the requirements and achievements he or she must fulfill or attain before they may be permitted to rise in the ranks of the department. The knowledge of when and under what conditions advancement is possible is obviously important to unit employees and ultimately tied to effective performance of unit work.

* * *

"In the instant case I conclude that requiring the employer to bargain with the union about the standards and criteria to be used for promotion from patrolman to sergeant would not unduly interfere with the employer's management of the police department or necessarily interfere with the ultimate decision of the police commissioner as to who should be promoted under the terms of the city charter."

The standards and criteria for promotion are a mandatory subject of bargaining between the City and the DPOA under section 15 of PERA and the DPOA must be allowed to bargain with the City about a subject which so vitally affects them. MERC's finding that the City engaged in an unfair labor practice in refusing to bargain with the DPOA on the subject of promotional criteria is accordingly affirmed.

Affirmed.