CENTRAL MICHIGAN UNIVERSITY FACULTY ASSOCIATION v
CENTRAL MICHIGAN UNIVERSITY

Opinion of the Court

1. Labor Relations—Employment Relations Commission—Standards of Review—Statutes—Constitution.

Review by the Court of Appeals of a decision of the Employment Relations Commission is two-fold: whether the decision is supported by competent, material and substantial evidence on the whole record, and whether the decision is contrary to the constitution or to statute (Const 1963, art 6, § 28; MCLA 24.306, 423.216[e]; MSA 3.560[206], 17.455[16][e]).

2. Colleges and Universities—Labor Relations—Faculty Evaluations—Collective Bargaining Subjects.

The introduction of student evaluations into a teacher effectiveness program at a state university is essentially a matter of educational policy and also has a side effect upon the teachers' conditions of employment; however, a finding by the Employment Relations Commission that the introduction of evaluations is primarily an issue of educational policy and therefore not a mandatory subject of collective bargaining, where such a finding is supported by the record, is not violative of the constitution or statutes.

Dissent by M. F. Cavanagh, P. J.

3. Labor Relations—Public Employees—Collective Bargaining—Statutes.

*The public employment relations act requires a public employer to bargain collectively with the employees' representative on wages, hours, and other terms and conditions of employment, and an employer's refusal to bargain on these subjects constitutes an unfair labor practice; neither party may take unilat-*

References for Points in Headnotes
[1] 48 Am Jur 2d, Labor and Labor Relations §§ 958, 959.
[2, 4, 6, 7] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1193–1197, 1201, 1202.
[3, 5] 48 Am Jur 2d, Labor and Labor Relations § 1191 *et seq.*

*eral action on a subject that is classified as a mandatory subject of bargaining unless negotiations with the other party are at an impasse (MCLA 423.201 et seq.; MSA 17.455[1] et seq.).*

4. Labor Relations—Employment Relations Commission—Colleges and Universities—Faculty Evaluations.

*A finding of the Employment Relations Commission that a university administration did not unilaterally change the procedure for promotion of faculty members is not supported by the record as a whole where there is ample evidence that the university intended to make mandatory, subject to discipline, a recommendation that academic departments submit student evaluations of teaching effectiveness as a part of the departments' tenure recommendations.*

5. Labor Relations—Collective Bargaining Subjects—Employment Relations Commission—Public Employees.

*The classification of collective bargaining subjects as "terms and conditions of employment" is a matter of statutory construction for the courts, which should respect the judgment of the Employment Relations Commission because of its special competence to construe the public employment relations act, but, because public employees are forbidden to strike, the act should be expansively construed in order to protect the rights of public employees.*

6. Colleges and Universities—Labor Relations—Faculty Evaluations—Tenure and Promotions—Conditions of Employment.

*The criteria which determine promotion and tenure of university faculty members are a critical component of faculty employment conditions, and the mandatory inclusion of student evaluations of teaching effectiveness in those criteria clearly affects the conditions of employment.*

7. Labor Relations—Colleges and Universities—Faculty Evaluations—Tenure and Promotion.

*Evaluative criteria for the purposes of tenure and promotion of university faculty members are not strictly educational policy; such criteria bear directly on the means by which the administration determines whether or not untenured faculty members continue in their positions, and should therefore be made a mandatory subject of collective bargaining between the university and its faculty association.*

Appeal from Michigan Employment Relations

Commission. Submitted October 7, 1976, at Lansing. (Docket No. 27549.) Decided April 19, 1977.

The Central Michigan University Faculty Association charged to the Employment Relations Commission that Central Michigan University was guilty of an unfair labor practice because of the university's implementation of new faculty evaluation criteria. The administrative law judge found that the university had committed an unfair labor practice. The university appealed to the commission, which dismissed the unfair labor practice charge. The faculty association appeals by leave granted. Affirmed.

*Foster, Swift & Collins, P. C.* (by *James A. White* and *Clifford D. Weiler),* for plaintiff.

*J. David Kerr,* for defendant.

Before: M. F. CAVANAGH, P. J., and R. M. MAHER and BEASLEY, JJ.

BEASLEY, J. This case comes before this Court on leave granted to plaintiff-appellant, Central Michigan University Faculty Association, herein referred to as the association, to appeal a decision by the Michigan Employment Relations Commission, herein referred to as MERC.

In 1977, defendant-appellee, Central Michigan University, herein referred to as the university, is an established state institution of higher education with a student enrollment exceeding 15,000 and is governed by a Board of Trustees whose members are appointed by the Governor. Const 1963, art 8, § 6; MCLA 390.551; MSA 15.1120(1).

The association is the bargaining representative for the university faculty and is a party to the

collective bargaining agreement with the university which, for purposes of this case, covered the period from May 21, 1971 through June 30, 1974. Under the agreement, the association is the collective bargaining agent with respect to wages, hours and other terms and conditions of employment.

On April 30, 1973, the academic senate of the university passed a resolution putting into effect a teaching effectiveness program which gave rise to this controversy. The academic senate consists primarily of faculty members, although there are a few administrators and students. As is customary with Michigan's major institutions of higher learning, much policy originates with the faculty by way of the academic senate and finds its way to the governing body. On August 15, 1973, the university's Board of Trustees adopted the teaching effectiveness program and its implementing provisions. The implementing recommendations for the university departments are as follows:

"a. Each academic department should establish, not later than one year after the approval of this recommendation, a systematic program for (a) evaluating and (b) improving teaching effectiveness of every faculty member in the department.

"b. All faculty members of the department should participate in determining the instruments and procedures involved in the evaluative process.

"c. *Students as well as departmental faculty should evaluate the faculty of said department.*

"d. Information obtained about an individual faculty member should be made available to that individual faculty member and to those individuals having the responsibility of making recommendations and/or decisions regarding reappointment, merit pay, tenure, and promotion.

"e. Departmental recommendations for reappoint-

ment, promotion and tenure should be accompanied by evidence of teaching effectiveness. This is not to limit the accompanying evidence to data on teaching effectiveness." (Emphasis added.)

On January 28, 1974, the association charged the university with an unfair labor practice under § 10 of the public employment relations act, herein referred to as PERA. MCLA 423.210(1)(e); MSA 17.455(10)(1)(e). Among other things, the association claims that the teaching effectiveness program is a mandatory subject of collective bargaining and that, therefore, under the collective bargaining agreement, its unilateral adoption by the university without collective bargaining is an unfair labor practice.

Hearing was held before an administrative law judge who recommended that the university was guilty of an unfair labor practice under § 10 by unilaterally adopting and implementing the teaching effectiveness program without bargaining with its exclusive certified collective bargaining agent, namely, the association.

Defendant university then appealed to MERC which rejected the recommendation of the administrative law judge and dismissed the unfair labor practice charge. From that decision, the association now appeals.

Appeals from MERC are controlled by both the constitution and applicable statutes. Article VI, § 28 of the Constitution provides:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination

whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28, also, *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96; 204 NW2d 218 (1973).

The Administrative Procedures Act provides in part as follows:

"Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

* * *

"(d) Not supported by competent, material and substantial evidence on the whole record." MCLA 24.306; MSA 3.560(206).

In addition, § 16(e) of PERA provides:

"Any person aggrieved by a final order of the board granting or denying in whole or in part the relief sought may obtain a review of such order in the court of appeals * * * . The findings of the board with respect to questions of fact if supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive." MCLA 423.216(e); MSA 17.455(16)(e).

Consequently, our review is two-fold. First, is MERC's decision supported by competent, material and substantial evidence on the whole record, and second, is MERC's decision contrary to the constitution or statute?

At issue here is MERC's decision and order.

Prior to decision, MERC received a detailed recommendation from the administrative law judge who presided over the lengthy hearings relative to plaintiff's charge of an unfair labor practice. After careful consideration of that recommendation, on January 30, 1976, MERC rendered its decision and order accompanied by a dissent.

The gist of MERC's ruling is as follows:

"Consistent with the holdings in other jurisdictions and based on the record as a whole, we find that the documentation of teaching effectiveness is predominantly a matter of educational policy not mandatorily negotiable."

MERC's ruling provided further that:

"This opinion should not be interpreted as meaning that there are no limitations on procedures with respect to tenure, reappointment, promotion and movement of personnel which may be adopted by the governing board of an institution of higher learning. The rule of reasonableness, as in all labor relations relationships, applies. The evidence establishes that Section 1 of the 'Teaching Effectiveness—Implementing Recommendations' document is a reasonable exercise by the Board of Trustees of its constitutional and statutory powers.

"In addition, the Association is vested with the privilege to bargain over the impact or effect of the Board's unilateral action. * * *

"Whether a particular rule, policy or procedure or the impact of *[sic]* effect of unilateral action, is reasonable may be tested through court action or through the grievance and arbitration provisions of a collective bargaining agreement."

MERC then proceeded to dismiss plaintiff's charge of an unfair labor practice. MERC's decision is

based upon findings that can only be characterized as mixed findings of law and fact.

In the *Detroit Symphony Orchestra*[1] case, Justice FITZGERALD traces and carefully reviews the history regarding appellate review of MERC board findings of fact. He says:

"What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review." *MERC v Detroit Symphony Orchestra, Inc, 393 Mich at 124.*

In the *Detroit Symphony Orchestra* case the Court went on to affirm the Court of Appeals decision that held MERC's findings of fact to be speculative and not supported by substantial evidence. In that connection, the Court said:

"Our reading of the cold record indicates that the finding of the trial examiner is more plausible than the finding of the Board. Given this reading, are we to ignore the determination as to credibility of the only decisionmaker to hear testimony firsthand and, in effect, credit the contrary determination of the Board?

[1] *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116; 223 NW2d 283 (1974).

We think not. The findings of the trial examiner are a part of the record we are entitled to consider in exercising our review power." *MERC v Detroit Symphony Orchestra, Inc, supra,* 126–127.

Consequently, on this appeal the scope of review with respect to findings of fact is whether they are supported by competent, material and substantial evidence on the whole record. In addition, determination must be made whether the rulings "are authorized by law". *MERC v Detroit Symphony Orchestra, Inc, supra; Regents of the University of Michigan v Employment Relations Commission, supra.* To state the rule with this traditional distinction between questions of law and questions of fact is far easier than its application.

"The problem of determining questions of fact versus questions of law versus mixed questions of law and fact is one that has concerned many courts and legal commentators." *Regents v Employment Relations Commission, supra,* 102.

MERC correctly deemed the issue to be whether the teaching effectiveness implementation recommendation document, objected to by the association, is educational policy which the university Board of Trustees has power to adopt unilaterally without collective bargaining or is a condition of employment concerning which PERA requires collective bargaining before adoption. If we deem the question to be one of fact, there is sufficient evidence in this record to support either conclusion. That is, there is sufficient evidence to support the conclusion that the teaching effectiveness implementation recommendation document is a matter of educational policy. But also, there is sufficient evidence to support the conclusion that the teach-

ing effectiveness implementation recommendation document in practice bears upon the conditions of employment. However, the issue is too complicated to admit of easy answer by this analysis because the question involved is more one of law than fact. Of course, the new and perhaps controversial aspect of the teacher effectiveness program is the evaluating of teachers by students. But, as the university indicates, these evaluations are merely intended to improve the quality of evidence of teaching effectiveness which has always been a criterion for better judgments of teacher effectiveness. They are only one of several factors going into the evaluations.

As such, these evaluations are several steps removed from usual concepts of conditions of employment. Thus, in part, the narrow issue becomes whether the addition of student evaluations, as a criterion of teacher effectiveness, alters the conditions of employment so as to be an unlawful labor practice in the absence of collective bargaining before adoption.

MERC answered the issue in the negative, saying it must be considered in the traditional historical context of existing governance systems in the state universities. There can be no question that college faculties play a significant role in determination of educational policy in the universities. Their role blurs the usual distinctions between labor and management. The document here under attack is entirely a product of the academic senate. Essentially, this phase of a teacher effectiveness program is a matter of educational policy. That it has a side effect upon conditions of employment cannot be denied.

MERC, vested with responsibility for and possessed of experience and expertise in these mat-

ters, has determined that this issue is primarily one of educational policy. We are not prepared to hold that such finding violates the constitution or statutes.

In summary, we find MERC's decision does not violate the constitution or statutes and is supported by competent, material and substantial evidence on the whole record.

Affirmed.

R. M. Maher, J., concurred.

M. F. Cavanagh, P. J. *(dissenting)*. Central Michigan University is established by Const 1963, art 8, § 6. As a "public employer" it is subject to the provisions of the public employment relations act (PERA). MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* See *Board of Control of Eastern Michigan University v Labor Mediation Board,* 384 Mich 561; 184 NW2d 921 (1971). PERA requires a public employer to bargain collectively with the employees' representative on "wages, hours, and other terms and conditions of employment". MCLA 423.215; MSA 17.455(15). The employer is guilty of an unfair labor practice for refusal to bargain collectively on these subjects. MCLA 423.210; MSA 17.455(10). When a subject is classified as a mandatory subject of bargaining, neither party can take unilateral action on that subject without an impasse in negotiations with the other party. *Detroit Police Officers Association v City of Detroit,* 391 Mich 44, 54–55; 214 NW2d 803, 808 (1974).

The aspect of the teaching effectiveness program which constitutes the gravamen of the unfair labor practice charge is contained in part I of the document:

"c. Students as well as departmental faculty should evaluate the faculty of said department."

## I

The administrative law judge found upon an ample record that the university administration intended to enforce this "recommendation" as mandatory; academic departments which failed to submit additional "quantitative" evidence of teaching effectiveness with faculty tenure recommendations would be subject to discipline.

The majority opinion of the Michigan Employment Relations Commission rejected that finding as inconsistent with the language of the document; since the teaching effectiveness document only *suggested* a change, there had been no change in terms or conditions of employment. I can discern no record support for the MERC's assertion that the university did not unilaterally change the promotion procedure. Both parties agreed on the effect of *implementation* of the document, indeed, that is the basis of this proceeding. I would reject the MERC finding as unsupported by the record as a whole.

## II

I disagree with the majority opinion's conclusion that incorporation of student evaluations into the criteria for faculty promotion and tenure is a matter of "educational policy" outside of the arena of mandatory collective bargaining.

Our first task is to determine whether the mandatory inclusion of student evaluations within criteria for faculty tenure and promotion is a "term and condition of employment" within § 15 of the PERA; MCLA 423.215; MSA 17.455(15). While

this Court respects the judgment of the agency charged with special competence to construe the PERA, the classification of bargaining subjects as "terms and conditions of employment" remains a task of statutory construction. *Detroit Police Officers Association v Detroit,* 61 Mich App 487, 491; 233 NW2d 49 (1975), *lv den* 395 Mich 756 (1975). In accomplishing that task, "we must keep in mind that because public employees in Michigan are forbidden to strike, 'section 15 of PERA must be even more expansively construed than its NLRA counterpart' in order to adequately protect public employees' rights. *Van Buren Public School District v Wayne Circuit Judge,* 61 Mich App 6; 232 NW2d 278 (1975)." *Detroit Police Officers Association v Detroit, supra,* at 491; 233 NW2d at 51.

The criteria which determine promotion and tenure are a critical component of faculty employment conditions. The means chosen to evaluate the teaching effectiveness of an untenured faculty member may ultimately determine whether he or she may continue to teach. There can be little doubt that criteria for promotion would affect the performance of an established member of the faculty. *Detroit Police Officers Association v Detroit, supra.* Mandatory inclusion of student evaluations clearly affected the conditions of employment.

Our second task is to determine whether the unique function and collegial organization of the university justifies excluding the subject of promotion and tenure evaluation criteria from the scope of matters within the mandatory bargaining obligation. This concern stems from respect for the traditional, independent governance systems of our state universities and from the unique status accorded the state universities by Const 1963, art 8, §§ 5 and 6. The issue is analogous to a problem

familiar in the private labor relations sector: to interpret the collective bargaining obligation to preserve management control over the "basic direction of [the] corporate enterprise" without stripping employees of their right to bargain over important aspects of their employment. *Fibreboard Paper Products Corp v National Labor Relations Board,* 379 US 203, 223; 85 S Ct 398; 13 L Ed 2d 233 (1964) (concurring opinion of Stewart, J.).

I cannot agree with the majority's conclusion that evaluative criteria for purposes of tenure and promotion are strictly "educational policy". This matter bears directly on the means by which the administration will determine whether or not untenured faculty members will continue their positions. Surely the criteria for that decision are important to the members of the bargaining unit. While evaluation of teaching effectiveness is not a trivial element of the university's educational program, I cannot perceive the method of that evaluation to be integral to the university's mission: to educate.[1] I would strike the balance in favor of the limited obligation to bargain before unilateral imposition of new criteria. This would not block the ultimate adoption of student evaluations as part of the criteria of teaching effectiveness; it would merely impose the reasonable burden upon the university to consult the association and discuss the program before its implementation.

I would reverse the decision of the MERC.

---

[1] More fundamental matters such as curriculum, degree requirements, or research facilities might not be subject to mandatory collective bargaining. *Regents of the University of Michigan v Employment Relations Commission,* 389 Mich 96, 107; 204 NW2d 218, 224 (1973). However, such an issue is not present in this case.