**GRAND FORKS EDUCATION ASSOCIA-
TION, Appellee and Cross-Appellant,**

v.

**GRAND FORKS PUBLIC SCHOOL DIS-
TRICT NO. 1, a Public Corporation, and
Dr. Raymond Fischer, Jack Kramer, F.
John Marshall, Mrs. Barbara Norby,
Mrs. Niomi Phillips, Michael Polovitz,
Peter Porinsh, Roy Trueblood, Dr. D.
Jerome Tweton, and Major Sidney
Hoekstra, as members of the Grand
Forks Public School District No. 1, a
Public Corporation, Appellants and
Cross-Appellees.**

Civ. No. 9623.

Supreme Court of North Dakota.

Oct. 25, 1979.

Chapman & Chapman, Bismarck, for ap-
pellee and cross-appellant; argued by Dan-
iel J. Chapman, Bismarck.

Shaft, McConn, Fisher & Thune, Grand
Forks, for appellants and cross-appellees;
argued by Gary R. Thune, Grand Forks.

SAND, Justice.

In the early part of July 1978 the Grand
Forks Education Association [Association]
negotiated and executed a master contract
with the Grand Forks Public School District
No. 1 [Board]. In the latter part of July
the assistant superintendent of the Grand
Forks school system met with principals of
the two high schools in Grand Forks regard-
ing a stepped-up program of pupil discipline
designed to meet problems with regard to
vandalism and excessive noise during class
periods. As the result of the meeting be-
tween the assistant superintendent and the
principals of the two high schools a plan
was developed which in essence provided
that each teacher be assigned one hour of
hall monitoring supervisory duties in addi-
tion to duties performed otherwise. The
teachers had no prior notice on this subject
nor did they participate in the meeting.

In the early part of November two teach-
ers filed a complaint alleging that the new
supervision policy severely changed work-
ing conditions and took away preparation
time. The teachers' immediate supervisor
responded [1] by stating that it was manage-
ment's prerogative to make these types of
assignments which improved the school cli-

---

1. Supervisor's Reaction: The teacher's work
day at school has not been lengthened. It is
defined as 7:40 a. m.-3:10 p. m. and 8:30 a.
m.-4:00 p. m. I have always attempted to as-

sign this teacher time to meet the particular
needs of a specific school year. We have not
been satisfied with the former system of hall-
way supervision. The present system has

mate and that they do not violate the negotiated agreement or school board policy. The Board agreed with the supervisor (administration). The Association then commenced injunctive proceedings to prohibit the Board from instituting the changes in working conditions at the two high schools, specifically the requirement that the teachers be assigned one hour of hall monitoring duty each day and that the injunction continue until such time as the Board has complied in good faith with the provisions of Ch. 15–38.1 of the North Dakota Century Code.

At the trial, after the Association introduced testimony of two witnesses and rested, the Board moved for a dismissal of the proceedings. The court granted the motion for dismissal but also ruled that the issue was arbitrable and was a matter to be presented as a grievance under the Grievance and Complaint Procedure No. 2450. The Board appealed and the Association cross-appealed.

The Board, on appeal, basically agreed that the dismissal was proper but asserted the ruling that supervisory work (hall monitoring) by the teachers constituted a grievance under the Grievance and Complaint Procedure was error. The trial court's ruling apparently served as a basis for the dismissal of the proceedings.

The Association contended that the appeal of the Board should be dismissed and that judgment of the district court should be reversed and that the supervisory policy (hall monitoring) not be implemented until it has been made the proper subject of negotiations, as the statutes require. Sections 15–38.1–09, 15–38.1–08, and 15–38.1–12(1)(a), NDCC.

The Association also argued that the appeal should be dismissed on the legal grounds that the Board had received everything it had asked for, and in support of

functioned in excellent fashion as is witnessed to by the clean, safe, educational atmosphere of the building.

I believe it is a management prerogative to make these types of assignments that improve the school climate and do not violate the negotiated agreement or school board policy.

this argument the Association cited *Graven v. Backus*, 163 N.W.2d 320 (N.D.1968); *Application of Hvidsten Transport, Inc.*, 113 N.W.2d 73 (N.D.1962); 4 Am.Jur.2d *Appeal and Error* § 185, that only an aggrieved party may appeal and that the Board was not an aggrieved party. We, however note that the court in dismissing the complaint ruled that the basic issue was a matter to be resolved by proceedings under the Complaint and Grievance Procedure, 2450, which the Board claimed was error. This case is readily distinguishable from the cited authorities.

We believe the court's ruling on the grievance procedure was the basis for granting the Board's motion to dismiss and is one of the basic issues in this appeal, and conclude that the Board had a right to appeal, which appeal we will consider on its merits.

The principal issue is whether or not the supervisory program (hall monitoring) adopted in July of 1979, which had not been placed on the negotiation table by either side, made the working conditions better or less favorable to the teachers than they were the previous year, and, therefore, should have first been placed on the negotiation table for approval before implementing it. In brief, the Association contends that the teachers had two preparation periods the year before, but under the new supervisory program they have only one, which makes the working conditions less favorable.

The district court found as a fact that the president of the Grand Forks Education Association and the chairman of the Grievance Committee recognized the Grievance and Complaint Procedure, 2450, as the procedure for handling grievances and complaints from teachers within the school district.

I am willing to consider modification of the supervision plan after the present mode of operation becomes habit with students and staff. This may take all year to effect.

Significantly, the Association, in its brief, stated:

". . . the trial court was correct in holding that this was a grievance, subject to binding arbitration."

Under the Grievance and Complaint Procedure, 2450, a teacher may proceed by either complaint or grievance, as the case may be. Furthermore, any decision reached by either the complaint or grievance process will not deprive the party of any legal rights nor will it preclude either party from taking any legal action in regard to the matter involved.

Under Section II, Definitions, of 2450, we find that:

"A complaint is an event or circumstance for which a teacher feels dissatisfaction and chooses to communicate the concern to his/her immediate supervisor.

"A grievance is also an event or circumstance for which a teacher feels dissatisfaction and chooses to communicate the concern to his/her immediate supervisor. However, a grievance must be directly related to the terms of the teacher's individual contract with the School District, or a concern related to the terms of the negotiated agreement/agreements between the School Board and the Grand Forks Education Association (or other officially recognized teacher representative organization)."

Under Section III, General Procedures and Guidelines, of 2450, we find that:

"In general, the nature of the problem should suggest the mechanism to be employed—a 'grievance' should employ the grievance machinery and a 'complaint' should employ the complaint machinery; however, since the nature of specific concerns cannot be ascertained with assurance, crossover will be permitted subject to the limitations hereinafter suggested. The use of one mechanism will not negate the capacity to use the other; a person may file a complaint; if the content of the complaint seems to be more properly a 'grievance' the fact that a complaint was filed does not prevent the later filing of a grievance. . . ."

From this provision it appears that the labeling of a document is not critical, and that substance, rather than form, will prevail even though 2450 provides separate procedures for complaints and for grievances.

Section 15–38.1–01, NDCC, sets out the purpose of the Teachers Representation and Negotiation Act. It states that teachers have the right to join organizations of their own choice and to be represented by the organizations selected in matters pertaining to their professional and employment relationship with the school board.

Sections 15–38.1–08 and 15–38.1–09, NDCC, give the selected representative organizations the right to negotiate on matters relating to terms and conditions of employment on behalf of the teachers who are represented. From the tenor of Ch. 15–38.1, particularly § 15–38.1–12, some of the negotiations contemplated by the Act are those arising out of the renewal of contracts under § 15–47–27, NDCC.

Section 15–38.1–12, NDCC, setting out basic good faith requirements, also provides that the representative negotiating unit and the school board may formulate an agreement which may contain provisions for binding arbitration. It also provides that either party to a contract negotiated under this section may modify or terminate the contract on the annual anniversary date by giving notice of its desire to modify or terminate the contract to the other party not less than sixty days prior to the annual anniversary date.

We also note that § 15–38.1–14(2), NDCC, provides that nothing contained herein is intended to or shall conflict with, contravene, abrogate, or diminish the powers, authority, duties, and responsibilities vested in the boards of education by the statutes and the laws of the state of North Dakota.

Section 15–29–07, NDCC, provides that the schools of a public school district shall be under the supervision of the school board which may appoint a school superintendent to supervise the schools within the district, and when no superintendent is appointed by

the board the school district shall be under the immediate supervision of the county superintendent of schools.

School boards are under legislative control and may exercise only those powers expressly or impliedly granted by statute. *Myhre v. School Board of North Cent. Pub. Sch. Dist.*, 122 N.W.2d 816 (N.D.1963).

The Legislature, pursuant to Ch. 15–29, NDCC, in effect has given school boards the responsibility of organizing, establishing, operating, and maintaining the public schools (elementary and high schools). Section 15–29–08(2), NDCC. The board also has the authority and responsibility to adopt, alter, and repeal, when it deems expedient, rules and regulations for the government and instruction of pupils, including suspension and expulsion. Section 15–29–08(13), NDCC. The aforementioned statutory provisions clearly have reference to student conduct and placed the responsibility of maintaining proper order in and on the school premises initially upon the school board. Every imposition of responsibility to be effective must necessarily carry with it the commensurate authority to carry out the responsibility. Chapter 15–29, NDCC, gives the school this basic corresponding authority.

The Board itself does not do the actual teaching or the supervising of students, nor do the members of the Board personally perform the administrative details relating to and arising out of the education system or program. These functions are performed either individually or collectively, as the case may be, by the superintendent, principal, or teachers employed by the school board. The superintendent and principal, as the case may be, in some instances also act as agents of the school board.

Proper behavior of students and, for that matter, all school personnel is necessary for the wellbeing of the students and to establish and maintain an atmosphere conducive to good learning.

To resolve the issues under consideration we need to reconcile the provisions of Chapters 15–29 and 15–38.1, NDCC, and the Grievance and Complaint Procedure 2450.

In doing so we must make every effort to give proper effect to each provision. The validity of the grievance and complaint procedure has not been challenged and having been relied upon by both parties must be recognized as having valid standing.

If the negotiations under Ch. 15–38.1, NDCC, were to contemplate every conceivable difference that may arise, then the provisions of the Grievance and Complaint Procedure would be a nullity and would amount to mere idle language. Similarly, if prior negotiations in every instance were the absolute rule we could envision a marathon negotiation process being carried on, consuming much of the Board's and the Association's valuable time, leaving very little to the primary functions each are to perform.

We think it is reasonable to assume that the parties realize their inability to anticipate every conceivable situation that may arise, and that on occasion matters will arise which were not covered by an agreement or were not included in a previously negotiated session. It would be counterproductive to stop everything in such instances, particularly if an urgency exists, and insist upon a negotiation process before any action is taken. We believe that the grievance and complaint procedure under 2450 recognized this difficulty and was adopted as a means of resolving any differences that arise after an agreement has been reached through a negotiation process without going through the formal prior negotiations process in every instance.

The contention that every change or modification which may affect working relations or pertain to interpretation of existing agreements pursuant to § 15–38.1–12(1)(a), (b), NDCC, may be accomplished only after formal negotiations is inconsistent with the Grievance and Complaint Procedure which was adopted.

In the instant case, the urgency or emergency factor relating to the supervision or hall monitoring was not directly at issue and apparently any evidence presented on this issue was only incidental. The evi-

dence is not conclusive one way or the other.

We can understand situations may arise where action needs to be taken to secure and preserve orderly behavior of the students. These situations may arise at a time when the negotiating process would delay the ultimate disposition of the matter, creating an additional problem. Under such situations, administrative prerogatives may be exercised [see, *Central Michigan University Faculty Association v. Central Michigan University*, 75 Mich.App. 101, 254 N.W.2d 802 (1977)] giving the teacher or employee recourse to legal action for appropriate compensation or to proceed through the grievance and complaint procedure as provided for in this instance.

Here, the grievance and complaint procedure for teachers had been established and was in full force and effect and the teachers had recourse to such procedure.

Whether or not a certain matter comes within the scope of an arbitration agreement, as in this case the grievance and complaint procedure, is an appropriate decision for the court, including this Court. *West Fargo Public School District No. 6 of Cass County v. West Fargo Education Association*, 259 N.W.2d 612 (N.D.1977).

Cases were cited from other states by both sides in support of their position, but unless the state from which the citation was taken has similar statutes and agreement provisions the cases will not be very helpful unless the case was decided on a general principle of law rather than upon the specific statutes or agreement.

The negotiated agreement for the 1978–1979 school year under Articles IX and X provided for a 25–30 minute duty-free lunch period and assured each fulltime elementary teacher a minimum of one hour and fifteen minutes planning time (preparation time). The record contains no explanation why a similar provision was not provided for or negotiated for on behalf of the high school teachers involved in the present action. Neither does the record indicate which party, Board or Association, brought up the matter relating to the elementary

teachers. It does, however, clearly demonstrate that matters of this kind are generally brought up at the negotiation session, but for whatever reason this particular subject relating to high school teachers was not brought up at the previous session.

The district court concluded that the proper remedy in this instance for the imposition of additional duties was to proceed under the Grievance and Complaint Procedure, 2450. We affirm. In doing so, however, we do not imply that the provisions of Ch. 15–38.1, NDCC, should be disregarded whenever a grievance and complaint procedure exists. Both provisions need to be employed harmoniously in their respective areas.

We note the Complaint and Grievance Procedure, 2450, under Section III, General Procedures and Guidelines, subdivision G, provides that:

"Any decisions reached as a result of this process, shall in no way deprive the concerned parties of any legal rights, nor shall it preclude the taking of legal action of any kind in regard to the matter under discussion."; and

Section V, Grievance Procedure D, Step Four (Arbitration) subdivision 4, provides that:

"The ruling of the arbitrators shall be binding on all parties involved in the case."

On the surface, these provisions may appear to be in conflict with each other. However, the legal justiciable issues presented to us in this case do not require a resolution of this question, if there is one, nor is the issue ripe for our determination. We also take note that the Board's motion to dismiss its appeal and the Association's cross-appeal, in a supporting affidavit stated that the issue relating to the teachers' preparation time had been negotiated and an agreement had been reached subsequent to the filing of the Board's and the Association's briefs, and that the relief requested has been provided and a satisfactory resolution of all the issues on appeal and cross-appeal has been attained. The Association, however, does

not admit that the basic action by the administration giving rise to the issues has now become moot.

We believe the parties, the Board and the Association, tacitly understood that Ch. 15–38.1, NDCC, was to be used to develop agreements on major items and the provisions of the grievance and complaint procedure be used for minor problems that arise subsequent to the major agreement. Any matter which required the institution of either a grievance or complaint can be, and probably should be, brought up at the renewal time or at the expiration of the present contract agreement at the next regular negotiation session. We also believe that even in situations where a grievance and complaint procedure does not exist the aggrieved party may resort to appropriate legal action. Every case must be judged on its facts and surrounding circumstances.

The motion to dismiss the Board's appeal and the Association's cross-appeal is denied and the judgment of the trial court is affirmed, with costs to neither party.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.