F. GARY HONULIK *v.* TOWN OF GREENWICH ET AL.
(SC 18046)

Norcott, Katz, Vertefeuille, Zarella and Schaller, Js.

Argued April 15, 2008—officially released February 24, 2009*

---

* The plaintiff's motion for reconsideration en banc was granted on May 6, 2009. This opinion has been superseded by *Honulik* v. *Greenwich*, 293 Conn. 698, 980 A.2d 880 (2009).

*Sheila A. Huddleston*, with whom were *Fernando F. de Arango*, assistant town attorney, *Robin G. Frederick* and, on the brief, *John Wayne Fox*, town attorney, *Jill M. O'Toole* and *Laurie A. Sullivan*, for the appellants-appellees (named defendant et al.).

*William J. Kupinse, Jr.*, with whom, on the brief, was *Andrew M. McPherson*, for the appellee-appellant (defendant Michael A. Pacewicz).

*Kathryn Emmett*, with whom was *Christine Caulfield*, for the appellee-appellant (plaintiff).

*Kevin M. Greco* filed a brief for the Silver Shield Association as amicus curiae.

*Opinion*

SCHALLER, J. The dispositive issue in this appeal is whether the collective bargaining agreement (agreement) between the named defendant, the town of Greenwich (town), and the Silver Shield Association,[1] the union representing the town's police officers (union), governs the promotion to the position of police captain, which is a position outside the bargaining unit, and requires that the candidate with the highest assessment score on a promotional examination be awarded the promotion. The defendants, the town and certain city officials,[2] appeal[3] from the judgment of the trial

---

[1] The Silver Shield Association is the authorized union representing the uniformed and investigatory personnel in the town police department. It filed an amicus brief on behalf of the plaintiff.

[2] The defendants named in the complaint consisted of the town; its police chief, James A. Walters; its deputy chief, Pasquale Chila; its human resources director, Alfred C. Cava; and its candidate promoted to police captain, Lieutenant Michael A. Pacewicz. At the close of the plaintiff's case, all counts against Chila were dropped. We refer to Walters, Cava, Pacewicz and the town collectively as the defendants and individually by name when appropriate.

[3] The defendants petitioned this court for certification to appeal pursuant to General Statutes § 52-265a (a), which permits a direct appeal in an action

court in favor of the plaintiff, F. Gary Honulik, conclud-
ing that the town breached its agreement with the union
and deprived the plaintiff of his property interest in the
promotion without due process of law when it passed
over the plaintiff for promotion to police captain despite
the fact that the plaintiff had received the highest
assessment score on the examination. On appeal, the
defendants claim that: (1) because the position of police
captain is outside the bargaining unit, the town had
discretion to promote any candidate from the promo-
tional list irrespective of their ranking according to
examination score; and (2) because the town has discre-
tion to hire out of rank order, it did not deprive the
plaintiff of his property interest without due process
of law. We agree, and therefore reverse the judgment
of the trial court.[4]

The following facts and procedural history are rele-
vant to our resolution of the present appeal. On April
4, 2003, the town announced that an examination would
be administered to fill a vacancy for the position of
police captain in the town police department. The
announcement stated that the examination would be
"100 [percent]—Assessment Center." In an assessment
center examination, independent assessors evaluate a
candidate's qualifications through a variety of testing
procedures including role-playing, written examina-
tions and interviews. The agreement between the town
and the union, in part, limits the potential pool of appli-
cants eligible for promotion to police captain—and

that "involves a matter of substantial public interest and in which delay
may work a substantial injustice . . . ." During the pendency of the present
appeal, pursuant to a trial court order, the town has been enjoined from
filling any vacancies for the position of captain or deputy chief and from
reorganizing the police department. Justice Norcott, acting in the absence
of Chief Justice Rogers, granted the defendants' petition for certification
to appeal.

[4] Our resolution of the defendants' first two claims make it unnecessary
to reach their third claim that the trial court improperly measured damages.

therefore eligible to take the examination—to members of the bargaining unit protected under the agreement.[5] Five lieutenants from the town police department, including the plaintiff, took the examination. Pursuant to the town's personnel policy and procedures manual (policy manual) and classification and pay plan (pay plan),[6] Alfred C. Cava, the town's director of human resources, certified a promotional list that ranked the applicants' examination scores from highest to lowest.[7] The plaintiff received the highest score and the defendant Michael A. Pacewicz received the second highest score.[8] Prior to the subject vacancy, James A. Walters, the town's police chief, had not been called upon to make any promotions to the captain's position. Six days after the examination, Walters announced that he would conduct a postexamination interview.[9] Walters interviewed only the plaintiff and Pacewicz. Each interview was brief and consisted of a few questions. Thereafter,

[5] Paragraph D of article XXV of the agreement provides: "Promotion to the classification of [p]olice [c]aptain shall be made from bargaining unit employees who are candidates certified to the promotional list."

[6] The pay plan sets forth rules regarding personnel, salary and administration and is approved by the town's board of estimate and taxation and by the town's legislative body. The policy manual is approved by the town's board of estimate and taxation and by the first selectman and is a guide for day-to-day administration of the town's personnel programs to be used in conjunction with the charter, pay plan and applicable collective bargaining agreements.

[7] Section 4.1.19 of the pay plan defines "[p]romotional [l]ist" as: "A list of qualified employees who have passed a promotional examination for a position in the classified service and ranked on the list in the order of the score received, signed and approved by the Director of Human Resources."

[8] Honulik and Pacewicz received overall scores of 86.06 percent and 84.85 percent, respectively. The town divided the applicants, on the basis of their examination scores, into categories ranging from "Band I-Exceptional" to "Band VI-Very Marginal." Both the plaintiff and Pacewicz were categorized as "Band III-Qualified." The three other applicants were categorized as either "Band IV-Moderately Qualified" or "Band VI-Very Marginal."

[9] Walters testified that he consulted with Cava to confirm that he could interview the candidates after the examination.

Walters notified each applicant that he had decided to promote Pacewicz to police captain.[10]

Subsequent to Walters' decision to promote Pacewicz, the union brought an action to enjoin the promotion temporarily. After the trial court denied the ex parte injunction and scheduled a hearing for July 1, 2003, the town officially promoted Pacewicz to police captain.[11] The plaintiff and the union filed a grievance alleging that Pacewicz' promotion violated a provision of the agreement entitled the "Past Practices Clause."[12] After the town denied the grievance, the union sought to arbitrate the matter before the state board of mediation and arbitration, but the board found that the grievance was not arbitrable because the position of police captain was not within the bargaining unit and the promotional process for that position was therefore outside the scope of the agreement.

The plaintiff then filed this action against the defendants, bringing claims for breach of contract, promissory estoppel, quo warranto and mandamus, as well as for violations of the plaintiff's right to due process and equal protection under the federal and state constitutions.[13] On September 4, 2007, the trial court concluded that, by failing to promote the plaintiff, the town had

[10] Walters also testified that he confirmed with Cava that he could promote a candidate out of rank order.

[11] The union did not pursue the injunction action after Pacewicz was promoted, and the action was dismissed for dormancy on June 1, 2007.

[12] The past practices clause, set forth in article XXVIII of the agreement provides in relevant part: "All benefits and obligations which are not described in this [a]greement or in either the manual or plan and which are now enjoyed by or required of the employees are specifically included in this [a]greement by reference just as though each such benefit or obligation was specifically set forth."

[13] At the close of the plaintiff's case, the parties stipulated to dismiss all counts against Pasquale Chila, the town's deputy chief of police. The trial court dismissed all counts against Pacewicz except the claim for quo warranto and mandamus, and dismissed the breach of contract and promissory estoppel claims against Walters and Cava.

breached the agreement and that the town, Walters and Cava had deprived the plaintiff of his property interest in the promotion without due process. Specifically, the court concluded that the agreement governed the promotional process. The court relied on paragraph D of article XXV of the agreement (paragraph D), to conclude that because, at the time of the examination, the plaintiff was still a lieutenant—and, therefore, still a member of the bargaining unit—he remained protected by the terms of the agreement. In determining what, exactly, the agreement required, the trial court relied on the testimony of numerous witnesses to conclude that it was the past practice of the town to promote the candidate with the highest assessment score. In turn, the trial court concluded that the past practices clause of the agreement required the town to promote the plaintiff, and that the town breached the agreement when it failed to do so. With respect to the plaintiff's due process claim, the trial court relied on its conclusion that the agreement governs the promotional process to conclude that "promotion to [police captain] must be given to the officer who has been certified to the promotional list and who has the highest numerical rank . . . . No other factors are involved in the decision . . . ." Accordingly, the trial court ruled that the plaintiff had a constitutionally protected property interest in the promotion, and that by failing to promote the plaintiff, the town, Walters and Cava deprived him of his property interest in the promotion without due process of law.

On the basis of these findings, the trial court granted quo warranto and mandamus relief, ordering that Pacewicz be removed from the position of police captain and that the plaintiff be promoted to that position. In addition, the trial court awarded the plaintiff $71,506.66 in back pay and prejudgment interest and $3450 for the loss of the use of a vehicle, which the

town provides to all captains. Moreover, with respect to the plaintiff's due process claim, the trial court awarded attorney's fees pursuant to 42 U.S.C. § 1988 (b). The trial court, however, denied the plaintiff's promissory estoppel and equal protection claims. Subsequent to trial, both the plaintiff and Pacewicz filed motions to open and modify the judgment. The trial court denied Pacewicz' motion to open and the plaintiff's motion to open with respect to compensatory and punitive damages pursuant to 42 U.S.C. § 1983, but granted the plaintiff's motion to open in order to increase the award for loss of the use of a vehicle from $3450 to $19,448. The court also awarded attorney's fees of $249,082.50 and costs of $32,066.01. The town, Walters and Cava appealed from the judgment of the trial court. Both Pacewicz and the plaintiff filed cross appeals.[14]

I

The crux of this appeal is whether any provision within the agreement or any other applicable town document requires the town to promote the candidate with the highest ranked score to the position of police captain, or whether the town has discretion to promote any eligible candidate. The plaintiff claims that the trial court properly determined the town's past practices required the town to promote the candidate with the

[14] The plaintiff's cross appeal claimed that the trial court improperly failed to increase further the award for the loss of the use of the town vehicle and to award compensatory and punitive damages pursuant to 42 U.S.C. § 1983. Because we conclude that the plaintiff is not entitled to relief in this case, the plaintiff's cross appeal must also fail. In addition, Pacewicz cross appealed with respect to the trial court's quo warranto and mandamus order. On January 5, 2009, the plaintiff filed a motion requesting that we dismiss Pacewicz' cross appeal on the ground that Pacewicz' retirement from the town police department moots his appeal. Pacewicz filed an opposition to the motion. Because our resolution of this case makes it unnecessary to decide the cross appeal, we need not reach the issue presented by the motion to dismiss. Accordingly, we reverse the trial court's quo warranto and mandamus relief.

highest examination score, whereas the town claims that the past practices clause of the agreement is inapplicable because the captain's position is outside the bargaining unit. Instead, the town contends that paragraph D of the agreement specifically addresses the promotion of a bargaining unit employee to the position of captain, and permits the town to promote any bargaining unit member who is certified to the promotional list irrespective of rank order, which the town refers to as the rule of the list. We agree.

In order to illuminate the basis of the parties' arguments, we first briefly review the history of the agreement and the town's promotional practices. The critical moment came on July 1, 1999, when the town and the union amended the agreement.[15] The present appeal centers on the effect, if any, that these amendments had on the promotional process for the position of police captain. Prior to that date, the agreement's bargaining unit included all police sergeants, lieutenants and captains. The testimony at trial established that, with one exception,[16] for nearly thirty years the town routinely had promoted the officer with the highest examination score—for example, from sergeant to lieutenant or from lieutenant to captain.[17] After a period of negotiation, however, the town and the union amended the agreement to remove the police captain's position from the bargaining unit. At that time, the parties also amended the agreement to include paragraph D; see footnote 5 of this opinion; which requires that promotion to police captain shall be made from members of the bargaining unit certified to the promotional

---

[15] The operative dates for the new agreement ran from July 1, 1999, through June 30, 2004.

[16] The sole exception occurred when an officer with the highest examination score was not promoted because of a pending disciplinary matter.

[17] With respect to testimony regarding promotions from lieutenant to captain, every promotion, except the two simultaneous promotions described in this opinion, occurred prior to the 1999 amendments.

list. No other amendments were made, and no other clauses in the agreement specifically address the promotional process to police captain.

Several months after the amended agreement took effect, the town posted an announcement for two new police captain vacancies. As with the announcement in the present appeal, that announcement called for a 100 percent assessment center examination. Lieutenants Michael DeAngelo and David Ridberg received the two highest scores, and the police chief at the time, Peter Robbins, promoted both of them to the respective captain vacancies. The plaintiff contends that these events support his claim that, irrespective of the fact that the captain's position was removed from the bargaining unit, the past practices clause in the agreement continued to require the town to promote the highest scoring candidate or candidates to police captain. The town contends that, while Robbins did in fact promote the two highest scoring candidates, neither the agreement nor the pay plan and policy manual required him to do so.[18]

Because the resolution of this issue calls for the interpretation of both a collective bargaining agreement and various municipal rules and regulations, we set forth our standard of review. Principles of statutory construction govern our interpretation of the town policy manual and pay plan. See *Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005) ("[a]s with any issue of statu-

---

[18] Robbins testified that he did not consult the human resources department or the pay plan and policy manual to determine whether he was required to promote the candidate with the highest assessment score. In support of its position, the town cites the postassessment letters to DeAngelo and Ridberg, which state that "[y]our result places you on the list of candidates eligible for appointment to [police captain]. Under the [r]ules and [r]egulations of the . . . [p]ay [p]lan, a [d]epartment [h]ead may hire *any* candidate certified as eligible by the [h]uman [r]esources [d]epartment. Your name has been forwarded to the hiring authority for consideration for appointment to this position." (Emphasis added.)

tory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary" [internal quotation marks omitted]); *Secretary of the Office of Policy & Management* v. *Employees' Review Board*, 267 Conn. 255, 262, 837 A.2d 770 (2004) (applying statutory construction principles to state statute regulating state employees' personal leave and holiday time). Principles of contract law guide our interpretation of collective bargaining agreements. *Poole* v. *Waterbury*, 266 Conn. 68, 87–88, 831 A.2d 211 (2003). "The intent of the parties as expressed in a contract is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109–10, 900 A.2d 1242 (2006). "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

"[I]n construing contracts, we give effect to all the language included therein, as the law of contract inter-

pretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 14, 938 A.2d 576 (2008). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review." (Internal quotation marks omitted.) *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006). "When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 403, 927 A.2d 832 (2007).

We now turn to the merits of the fundamental question in this appeal, namely, whether the agreement applies and requires the town to promote the candidate with the highest assessment score to the position of police captain.[19] We conclude that paragraph D of the agreement does govern the promotional process, but does not require the promotion of the highest scoring candidate.

To better understand the question before us, we first frame the issue with reference to the five primary positions within the town police department, namely, the positions of sergeant, lieutenant, captain, deputy police chief and chief of police.[20] Inherent in our inquiry is the question of whether the agreement or town rules and regulations govern the promotional process for the position of police captain. To that end, we recognize three distinct categories. First, it cannot be disputed that the

---

[19] The question of who is eligible for promotion is not in dispute. The parties concur that paragraph D of the agreement requires that only members of the bargaining unit certified to the promotional list are eligible.

[20] Though perhaps obvious, we ultimately base our assertion on the documents provided by both parties.

agreement governs the hiring processes for the positions of sergeant and lieutenant.[21] In that posture, all the potential candidates and the positions themselves lie squarely *inside* the bargaining unit. Second, it also cannot be disputed that town rules and regulations, rather than the agreement, govern the hiring processes for the positions of deputy chief and chief of police.[22] In that posture, all the potential candidates and the positions themselves lie *outside* the bargaining unit. The question of what rules govern the third category, however, is presented in this appeal. In this posture, all of the potential candidates—town police lieutenants—lie *inside* the bargaining unit, but the position— police captain—lies *outside* the unit. As we shall see, these distinctions are critical in the context of labor law and, accordingly, to our resolution of the present appeal.

We must first determine the manner in which the agreement, the policy manual and the pay plan relate to one another. After reviewing these documents,[23] we conclude that § 3.2 of the pay plan sets forth the applicable paradigm. It provides that "[a]ny inconsistencies

---

[21] In such a case, if town rules and regulations were inconsistent with the agreement, the agreement would prevail pursuant to § 3.2 of the pay plan, which provides that "[a]ny inconsistencies between these rules and procedures and collective bargaining agreements shall be read in favor of the collective bargaining agreements."

[22] In such a case, any inconsistency between the town rules and regulations and the agreement would be irrelevant because neither the candidates nor the positions are within the bargaining unit. Accordingly, the town rules govern, unchallenged by provisions of the agreement.

[23] Both parties rely on provisions of the town charter, pay plan and policy manual, and the agreement to support their positions and those documents refer to one another. See, e.g., Greenwich Personnel Policy and Procedures Manual § 100 ("[t]he policy manual is intended to supplement and should be used in conjunction with the [t]own [c]harter, union agreements, [p]olicy [m]anual, [p]ay [p]lan rules"); article XXVIII of the agreement ("[a]ll benefits and obligations which are not described in this [a]greement or in either the manual or plan . . . are specifically included in this [a]greement"). We, therefore, analyze each document.

between [the town's] rules and procedures and collective bargaining agreements shall be read in favor of the collective bargaining agreements." Accordingly, because any inconsistency, if it exists, must be resolved in favor of the agreement, we turn first to examine whether the agreement is applicable to the promotion at issue and, if so, what requirements it places on that process. We begin with paragraph D, the only express clause incorporated into the agreement after the captain's position was removed from the unit in 1999. Although the position of captain, itself, is outside of the bargaining agreement, paragraph D describes the promotional process for that position as follows: "Promotion to the classification of [p]olice [c]aptain shall be made from bargaining unit employees who are candidates certified to the promotional list." We conclude that this provision clearly applies and is dispositive of the issue on appeal. The text of that clause unambiguously sets forth two criteria for promotion to police captain: (1) the candidate must be a bargaining unit member; and (2) the candidate must be certified to the promotional list. No other requirements may be inferred from that text. Although "[p]romotional list" is not defined in the agreement, it is defined in § 4.1.19 of the pay plan, which requires that eligible candidates must have passed the promotional exam and must have been approved by the director of human resources. In short, the town must promote a bargaining unit member who has passed the promotional exam and has been approved by the human resources director.[24] Nothing within the text of paragraph D, which speaks specifically to promotion to police captain, nor within the text of § 4.1.19 of the pay plan, which speaks to promotions in the town generally, mandates that the town promote

---

[24] The town's discretion to select any candidate who has qualified to be placed on the applicable list makes the process for promotions to police captain identical to the hiring procedures for the other two positions in the police department that are *outside* the bargaining unit.

the candidate with the highest score. Accordingly, we conclude that the trial court improperly interpreted the agreement, and that the town acted within its discretion in promoting Pacewicz, a bargaining unit employee certified to the promotional list, to the position of police captain.

On appeal, the plaintiff contends that the inclusion of paragraph D, which, in part, requires the promotion of a bargaining unit member, keeps the protections of the past practices clause in place during the promotional process for the captain's position. As a result, the plaintiff claims that the past practices clause requires the town to promote the highest scoring candidate. In order to prevail on this claim, the plaintiff must demonstrate that the past practices clause protects the practice at issue. At the outset, however, we observe that, because paragraph D deals specifically with the subject matter at issue, namely, promotion to police captain, reliance on past practices is inappropriate. See F. Elkouri & E. Elkouri, How Arbitration Works (A. Ruben ed., 6th Ed. 2003) c. 12, pp. 622, 627 (past practices clause invalid if it nullifies or broadens express provision; labor law arbitrators refuse to consider evidence of past practices inconsistent with provision that is clear and unambiguous on its face, citing to numerous arbitration and federal court cases that express similar views). To the extent, however, that the dissent is based on past practices, we address the merits of that argument.

We begin by setting forth well established principles of labor law in relation to promotions to positions outside the bargaining unit and to the effect of past practices clauses. Pursuant to these principles, the question of whether the past practices clause applies turns on whether the promotional process to a position outside the bargaining unit constitutes a mandatory or nonmandatory subject of bargaining.

The question of whether the promotional process for a position outside the bargaining unit constitutes a mandatory subject of bargaining is well settled under federal labor law. *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 578–79, 582–84, 295 A.2d 526 (1972) (relying on interpretations by National Labor Relations Board because Connecticut statutes dealing with labor relations closely patterned after National Labor Relations Act). As one leading treatise observes, the "[p]romotion of employees to positions outside the bargaining unit is not a mandatory subject" of bargaining. 1 A.B.A., The Developing Labor Law (J. Higgins ed., 5th Ed. 2006) c. 16, p. 1301 (citing decisions of National Labor Relations Board). Moreover, our state labor relations board also consistently has concluded that conditions for promotion to nonbargaining unit supervisory or managerial positions do not constitute mandatory subjects of bargaining. See *In re Bristol,* Conn. Board of Labor Relations Decision No. 1650 (May 24, 1978) (construing General Statutes § 7-474 [g] to conclude that promotion to position outside bargaining unit did not constitute mandatory subject of bargaining); *In re New London,* Conn. Board of Labor Relations Decision No. 2479 (April 15, 1986) (same).[25]

---

[25] The dissent relies on a decision of the Supreme Court of Michigan to support its assertion that "[t]here is not . . . universal consensus" as to whether promotions to positions outside a bargaining unit are nonmandatory subjects of bargaining. See *Local 1383 of International Assn. of Firefighters, AFL-CIO* v. *Warren,* 411 Mich. 642, 653 n.2, 311 N.W.2d 702 (1981). In that case, however, the court did not have before it the issue of whether the promotional process for a position *outside* the bargaining unit was a mandatory subject of bargaining. The promotional process at issue in *Warren* was with regard to positions *within* the bargaining unit. Id., 649–50. The footnote to which the dissent cites is dicta, citing with approval a decision of the Court of Appeals of Michigan, *Detroit Police Officers Assn.* v. *Detroit,* 61 Mich. App. 487, 492–94, 233 N.W.2d 49 (1975). Moreover, as the court in *Orlando* v. *Florida Public Employees Relations Commission,* 435 So. 2d 275, 280 (Fla. App. 1983), noted, the *Detroit* decision, although it does conclude that the promotional process for positions outside the bargaining unit is a mandatory subject of bargaining, "contains little analysis and does not attempt to distinguish between promotional criteria *within* the unit and

Although the interpretations of neither our state labor relations board nor the federal labor relations board is binding on this court, it is well established that courts accord great deference to the time-tested construction given a statute by the agency charged with its enforcement. See, e.g., *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 121, 742 A.2d 1257 (2000) (government agency's reasonable, time-tested interpretation should be accorded great weight by courts).

The general rule that promotion to a position outside the bargaining unit is not a mandatory subject of bargaining specifically was applied to the present case. In denying the grievance filed by the union on the plaintiff's behalf, the state board of mediation and arbitration (board) concluded that "[s]ince *the promotional process for this nonbargaining unit position ([c]aptain) is outside the mandatory bargaining scope,* the subject matter of the [u]nion's complaint cannot be reviewed through the [c]ontractual grievance and arbitration process."[26] (Emphasis added.) Pursuant to the terms of the agreement "[t]he decision of the arbitrator(s) shall be final and binding on all parties." Because the board was authorized to resolve this dispute, its decision is beyond judicial review unless the plaintiff satisfies provisions set forth pursuant to General Statutes § 52-418. See *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 153–54, 523 A.2d 1271 (1987). Since the plaintiff has not raised any such challenges, and the agreement includes a final and bind-

promotional criteria to positions *outside* the unit." (Emphasis in original.) A single, intermediate level appellate decision from another jurisdiction, from thirty years ago, with little analysis, is not sufficient to call into question the strong weight of authority supporting the opposite conclusion, namely, that the promotional process for positions outside a bargaining unit is not a mandatory subject of bargaining.

[26] Prior to this action, the union filed a grievance on behalf of the plaintiff with the board pursuant to article XXIII (A) (3) of the agreement.

ing arbitration provision, the determination of the board is binding on the parties. See *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 131, 728 A.2d 1063 (1999).

The significance of the distinction between mandatory versus nonmandatory[27] subjects of bargaining as it relates to past practices was aptly captured by one Pennsylvania court: "To conclude that an employer must bargain collectively with a bargaining unit over something that may constitute a past practice but is not a mandatory subject of collective bargaining would bind an employer to virtually all practices including matters of managerial prerogative extant at the time of negotiating a collective bargaining agreement . . . . Therefore, we agree with the [state labor relations board] that it is necessary that a practice, in order to be preserved, must also be a subject of mandatory bargaining." *South Park* v. *Labor Relations Board*, 789 A.2d 874, 879–80 (Pa. Commw.), appeal denied, 569 Pa. 727, 806 A.2d 864 (2002); see also *State System of Higher Education* v. *Assn. of Pennsylvania State College & University Faculties*, 834 A.2d 1235, 1242 n.6 (Pa. Commw. 2003).

Our state labor relations board also has addressed the issue of whether a past practices clause protects nonmandatory subjects of bargaining. It has concluded that past practices clauses that protect employees' "benefits," such as the clause at issue, protect only mandatory subjects of bargaining. *In re Connecticut*, Conn. Board of Labor Relations Decision No. 2662 (August 26, 1988) ("[t]he term 'benefits' clearly falls within the purview of wages, hours and conditions of

---

[27] For clarity, we recognize that in addition to mandatory and nonmandatory subjects of bargaining, there is a third category: illegal subjects of bargaining. No authority contends, however, that promotion to a position outside of a bargaining unit constitutes an illegal subject of bargaining. See, e.g., 1 A.B.A., supra, c. 16, p. 1393.

employment"); see also 1 A.B.A., supra, c. 16, p. 1291 (decisions of National Labor Relations Board stating "benefits" relating to wages, hours or conditions of employment may become mandatory subject of bargaining based on past practice). It is a well settled proposition of labor law that mandatory subjects of bargaining are those that relate to wages, hours and other conditions of employment. See, e.g., *West Hartford Education Assn., Inc.* v. *DeCourcy*, supra, 162 Conn. 578–79; *Danbury* v. *International Assn. of Firefighters, Local 801*, 221 Conn. 244, 249, 603 A.2d 393 (1992). With these principles in mind, we conclude that the past practices clause at issue, which preserves only "benefits" enjoyed by the employees, protects only matters that are related to mandatory subjects of bargaining.[28]

In making this conclusion, we pay particular attention to two other provisions within the agreement. First, article XXIII of the agreement, entitled "Arbitration and Grievance Procedure," limits grievances to those concerning "wages, hours, or conditions of employment, which wages, hours, or conditions are controlled by this agreement . . . ." It is significant that the agreement expressly limits grievances to mandatory subjects of bargaining, as evinced by the reference to "wages, hours, or conditions of employment," and does not offer arbitrability of nonmandatory subjects of bargaining.[29] Second, article XXIX of the agreement, enti-

---

[28] Neither the trial court nor the dissent analyze the language or contours of the past practices clause. Both simply take as a given that this particular past practices clause protects the practice at issue, namely, promotion to positions outside the bargaining unit. As we have detailed at length in part I of this opinion, the weight of labor law suggests that such a practice, which relates to a nonmandatory subject of bargaining, cannot be protected by the clause as set forth in the agreement. If the clause does not protect the practice at issue, then, as we argue, the past practices clause has no relevance, in which case, the plaintiff's claim cannot stand.

[29] In addition to matters concerning wages, hours, or conditions of employment, unit members may also grieve matters affecting "health and safety." Accordingly, we conclude that if the agreement intended to expand grievance

tled "Management Rights," provides in relevant part that "[n]othing contained in this [a]greement shall reduce by implication any management right . . . except as abridged or modified by an *express provision* of this [a]greement." (Emphasis added.) In order to give effect to that provision, we must draw a line as to the scope of the past practices clause. Otherwise, such clause, unrestricted, could by implication reduce any and all management rights. We therefore conclude that, because both of these provisions belie the notion that the past practices clause governs the nonmandatory bargaining subject of promotion to police captain, that clause is unambiguously inapplicable to the promotion at issue. To conclude otherwise would improperly enlarge the scope of the agreement. See *Hotel & Restaurant Employees Alliance, Local No. 237* v. *Allegheny Hotel Co.*, 374 F. Sup. 1259, 1264–65 (W.D. Pa. 1974) (court refused to enlarge scope of agreement via past practices clause for matter that was not term or condition of employment).

We also observe that our conclusion leaves intact the current status of labor law in our state. To conclude that past practices clauses protect nonmandatory subjects of bargaining, in the absence of express language to the contrary, would set forth a rule of law that might have the perverse effect of encouraging municipalities and other employers to behave erratically with respect to permissive subjects of bargaining so as not to create a past practice precedent. That we will not do.

Rather than demonstrate how the past practices clause incorporates the practice at issue, the dissent makes a subtle but significant departure from the plaintiff's argument. The dissent pivots away from reliance

---

protection beyond wages, hours, or conditions of employment—i.e., mandatory subjects of bargaining—it could have done so.

on the past practices clause[30] and instead resurrects the past practice at issue by treating it as a course of dealing, a tool of construction for ambiguous contract language, which it then uses to interpret paragraph D.[31] In essence, whereas our contract law requires us to determine whether an agreement is ambiguous or unambiguous, the dissent attempts to create a third category of construction—one in which the agreement is unambiguous, but only after reference to tools of construction appropriate only to interpret ambiguous language.[32] This method of construction, if adopted, arbitrarily would permit evidence of the parties' intent, so long as that evidence was characterized as a past practice or course of dealing, while prohibiting other evidence of the parties' intent which would be permissible under a more traditional analysis of ambiguous contract language. Not surprisingly, the authority cited by the dissent does not support this method of construction and clearly demonstrates that reliance on past practice is appropriate only in interpreting ambiguous language.[33] See F. Elkouri & E. Elkouri, supra, c. 12, p.

[30] By pivoting away from the past practices clause, the dissent relieves itself of the task of demonstrating how that clause protects the practice at issue.

[31] As the agreement makes clear, the purpose of the past practices clause is to incorporate into the agreement any applicable practice "just as though each such benefit or obligation was specifically set forth." Therefore, it is a wholly different matter to treat a practice not covered by the clause as a course of dealing to interpret *another provision* within the agreement.

[32] The dissent asserts that after resort to past practice the "agreement unambiguously requires the town to continue its past practices for promotions to captain." Indeed, it is difficult to discern whether the dissent construes the agreement to be ambiguous or unambiguous. Although it asserts that the agreement is unambiguous, the dissent, in addition to its reliance on tools of construction for ambiguous language, concludes by arguing that the agreement could also be viewed as ambiguous, and then goes on to make selective arguments regarding the parties' intent.

[33] The significance of this point was persuasively stated by the United States Court of Appeals for the Seventh Circuit: "To place past practice on a par with the parties' written agreement would create the anomaly that, while the parties expend great energy and time in negotiating the details of the [a]greement, they unknowingly and unintentionally commit them-

623 (discussing role of custom and practice in interpretation of ambiguous language); see also *Black* v. *Surface Transportation Board*, 476 F.3d 409, 414 (6th Cir. 2007) ("[f]aced with an ambiguous provision . . . arbitration panel properly referred to the past practice of the parties"); *Anheuser-Busch, Inc.* v. *International Brotherhood of Teamsters, Local No. 744*, 280 F.3d 1133, 1139 (7th Cir. 2002) ("reliance on the law of the shop is appropriate to interpret ambiguous contract terms" [internal quotation marks omitted]). Because the dissent's interpretation of the agreement is incorrectly based entirely on this tool of construction, the dissent's conclusions are inherently flawed.

Proceeding with this tool of construction, the dissent bases its ultimate conclusion on an interpretation of the term "promotional list" independent of that term's definition in the pay plan. Contrary to the dissent, both parties rely on the pay plan's definition of that term. Moreover, to supplement the dissent's independent interpretation of "promotional list," it asserts that the town's definition also is consistent with the past practice of promoting the highest ranked candidate.[34]

selves to unstated and perhaps more important matters which in the future may be found to have been past practice." (Internal quotation marks omitted.) *Anheuser-Busch, Inc.* v. *International Brotherhood of Teamsters, Local No. 744*, 280 F.3d 1133, 1138–39 (7th Cir. 2002).

[34] The dissent places great emphasis on the portion of § 4.1.19 of the pay plan that provides that candidates will be "ranked on the list in the order of the score received"; see footnote 7 of this opinion; to support its contention that the town must promote the highest ranked candidate. The dissent, however, is unable to explain why the testimony at trial established that for the positions of deputy chief and chief of police, the town was free to promote *any* candidate certified to the eligibility list, despite the fact that that list also calls for candidates to be "ranked on the list in the order of the score received . . . ." Greenwich Classification and Pay Plan § 4.1.19.

Moreover, similar language in § 7-474 (g), which addresses the interplay of towns and collective bargaining agreements, *never* has been interpreted to require municipalities to promote the highest ranked candidates. Section 7-474 (g) provides in relevant part that "[n]othing herein shall diminish the authority and power [of a town] . . . to conduct and grade merit examinations and *to rate candidates in the order of their relative excellence* from

Because the term "promotional list" applies to *all municipal employees*, however, to give that term an interpretation in light of a past practice within the *police department* would improperly extend the reach of that conclusion.[35]

Even assuming that some other language in the agreement could be construed to govern promotion to police captain, a careful review of the record reveals no evidence to support that the town ever engaged in a past practice where it promoted the highest scoring candidate who was a member *inside* the bargaining unit to a position *outside* the bargaining unit. Although the trial court found that for thirty years, the town routinely had promoted the highest scoring candidate, that evidence was overwhelmingly limited to circumstances where all the candidates and the positions themselves were *inside* the bargaining unit.[36] Notably absent were findings that prior to the 1999 amendments, the town engaged in a practice of promoting the highest

which appointments or *promotions* may be made to positions in the competitive division of the classified service . . . ." (Emphasis added.) Like the language in § 7-474 (g), the language in § 4.1.19 of the pay plan relates to the process in which the town *compiles* the list, but it does not establish a substantive requirement.

[35] This concern is especially apt considering that the record is replete with evidence that the town has promoted outside of rank order for other municipal positions, despite the fact that those lists also required candidates to be listed in rank order.

[36] We recognize that subsequent to the amended agreement, the town did in fact promote the two highest scoring lieutenants to police captain vacancies. That singular instance cannot, on its own, support a proposition that the town has established a past practice of hiring the highest scoring bargaining unit member to a position outside the bargaining unit. "[A] past practice must be clearly enunciated and consistent, *endure over a reasonable length of time,* and be an accepted practice by both parties." (Emphasis added.) *Public Service Electric & Gas Co.* v. *Local 94 International Brotherhood of Electrical Workers,* 140 F. Sup. 2d 384, 398 (D.N.J. 2001), citing *Posadas de Puerto Rico Associates, Inc.* v. *National Labor Relations Board,* 243 F.3d 87, 92 (1st Cir. 2001); see also F. Elkouri & E. Elkouri, supra, c. 12, p. 625 (single incident has been held insufficient to establish past practice, citing arbitration cases therein).

ranked candidates who were *inside* the bargaining unit to a position *outside* the bargaining unit.[37] Absent such evidence, there is no support in the record for a past practice of promoting the highest ranking candidate, who is still a member of the bargaining unit, to a position outside the bargaining unit. In effect, the plaintiff and the dissent ask us to take a proposition that applies to one scenario, a situation in which both the candidates and the vacancies are inside the unit, and apply it to a different scenario, one in which the candidates are inside the unit, but the vacancy is not. See F. Elkouri & E. Elkouri, supra, c. 12, p. 610 ("the underlying circumstances must be considered to give a [past] practice its true dimensions"). We decline to gloss[38] over this discrepancy given that labor law makes a distinction between those two postures and that other evidence that spoke directly to promotions outside the bargaining unit existed, but was not found by the trial court to be part of the alleged past practice.

---

[37] Prior to 1999, that evidence would have needed to show that the town engaged in a practice of promoting the highest ranked police captains, who at the time were still members inside the bargaining unit, to the position of deputy chief, which was, and still is, outside the unit.

[38] Past practice may no longer bind a party if the underlying conditions on which that practice was based have changed. F. Elkouri & E. Elkouri, supra, c. 12, p. 618. The dissent attempts to circumvent this principle by asserting that the status of the captain's position, inside or outside of the unit, was not a condition on which the practice was based. This is simply not the case. *All* the evidence that supported rank order promotion was in connection with promotions to positions *inside* the bargaining unit, and *no* evidence was presented regarding a requirement for rank order promotion with respect to positions *outside* the bargaining unit. It cannot be denied then, that the past practice of rank order promotion was conditioned on the fact that promotions were made to positions *inside* the bargaining unit. Under the facts of the present case, that condition has obviously changed.

In short, the dissent's assertion exemplifies the crux of the dispute between it and the majority. The dissent unyieldingly refuses to acknowledge that the removal of the police captain's position from the bargaining unit had an impact on promotions to that position. In accordance with the constructs of labor law, we are bound to accord proper significance to that fact.

Finally, to the extent that the dissent predicates its argument on the notion that the town did not expressly disavow its past practice, such an argument is misplaced. In promoting Pacewicz over the plaintiff, the town has not altered its past practice. As noted, the evidence at trial established that the town has engaged in a past practice of promoting the highest ranked candidate to positions *inside* the bargaining unit. It is well established that promotions within the bargaining unit do constitute mandatory subjects of bargaining. 1 A.B.A., supra, c. 16, pp. 1300–1301. The town has not sought to disavow itself of that particular practice. Rather, the town contends that no such practice exists for promotions to positions outside the bargaining unit.

In sum, absent a demonstration of how the past practices clause can preserve a nonmandatory subject of bargaining or how another agreement provision unambiguously supports the contention that the town did in fact agree to bargain over promoting the highest ranking candidate to police captain, the plaintiff's argument must fail.

II

We next address the town's claim that the trial court improperly concluded that the town deprived the plaintiff of his property interest without due process of law in violation of 42 U.S.C. § 1983, by promoting Pacewicz to police captain even though the plaintiff had received the highest examination score. The trial court concluded, on the basis of its conclusion that the past practices clause required the town to promote the highest scoring candidate, that the plaintiff had a property interest in the promotion to the position of police captain. The trial court determined that the plaintiff's "expectation of promotion based upon his rank on the promotion list rises to the level of a constitutionally protected property interest." On appeal, the defendants

argue that, because the agreement provides the town with discretion to hire any candidate certified to the promotional list, the plaintiff cannot, as a matter of law, have a constitutionally protected property interest. We agree.

"Our due process inquiry takes the form of a two part analysis. [W]e must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was . . . due." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 499, 778 A.2d 33 (2001). If a claimant does not sufficiently establish the existence of a constitutionally protected interest, the due process analysis ceases because no process is constitutionally due for the deprivation of an interest that is not of constitutional magnitude. *Hunt* v. *Prior*, 236 Conn. 421, 442, 673 A.2d 514 (1996).

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

"Property interests, of course, are not created by the [c]onstitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, supra, 257 Conn. 499, quoting *Board of Regents* v. *Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

In light of our conclusion in part I of this opinion, it follows that the plaintiff does not have a constitutionally protected property interest because the town retains discretion to promote any candidate certified to the promotional list to the position of police captain. In order to prevail, the plaintiff was required to establish that provisions of the town charter, pay plan, policy manual or the agreement created an entitlement that the highest ranked candidate automatically be promoted to police captain. As we have discussed in part I of this opinion, the plaintiff has failed to do so. Absent a legitimate claim of entitlement to the promotion, the plaintiff does not have a constitutionally protected property interest.

Because we conclude that the plaintiff does not have a constitutionally protected property interest, the trial court's award of attorney's fees to the plaintiff cannot stand.

### III

As an alternate ground for affirmance, the plaintiff contends that the trial court improperly denied his claim that the town, Walters and Cava violated his constitutional right to equal protection of the laws pursuant to 42 U.S.C. § 1983. The plaintiff advances two theories in support of his claim: (1) that the decision to pass him over for promotion was driven by a malicious intent to injure in violation of the test announced in *LeClair* v. *Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980), cert. denied, 450 U.S. 959, 101 S. Ct. 1418, 67 L. Ed. 2d 383 (1981); and (2) the town did not have a rational basis to promote Pacewicz over the plaintiff in violation of the test articulated in *Willowbrook* v. *Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). We are not persuaded.

The following additional facts are relevant to our resolution of this claim. In short, the plaintiff argues

that Walters' decision to promote Pacewicz to captain was motivated by bias toward the plaintiff and favoritism toward Pacewicz. To that end, the plaintiff principally cites two incidents involving Walters and himself, on which the trial court relied in finding that Walters harbored some bias against the plaintiff.[39] The first incident occurred in 1999. On that occasion, the plaintiff and two other officers successfully grieved low service ratings given to them by Walters. The second incident occurred one year later. In that episode, Walters, as shift commander, denied the plaintiff's request to swap shifts with another officer for the following day. The plaintiff had requested the change in schedule so that he could accompany his wife to a serious medical appointment. Subsequent to the denial, the plaintiff confronted Walters and twice, in the presence of the chief of police, called Walters a "liar." The trial court ultimately denied the plaintiff's claim. In its memorandum of decision, the trial court concluded that, although Walters had exhibited some bias against the plaintiff, such conduct did not rise to the level of a malicious intent to injure; rather, the court found that Walters' decision was intended primarily to promote Pacewicz as opposed to injuring the plaintiff.

We turn to the merits of the plaintiff's claim. As we have stated, "[t]he decisions of the federal circuit in which a state court is located are entitled to great weight in the interpretation of a federal statute. This is particularly true in 42 U.S.C. § 1983 cases, where the federal statute confers concurrent jurisdiction on the federal and state courts." (Internal quotation marks omitted.) *Red Maple Properties* v. *Zoning Commission*, 222 Conn. 730, 739 n.7, 610 A.2d 1238 (1992). We, therefore, look to recent decisions of the United States Court of Appeals for the Second Circuit for guidance on the

[39] The trial court found that Walters' "failure to appoint [the plaintiff] was motivated by bias against [the plaintiff] and favoritism toward Pacewicz."

issues presented in the present case. *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000).

"The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike." (Internal quotation marks omitted.) *Zahra* v. *Southold*, 48 F.3d 674, 683 (2d Cir. 1995). In *LeClair*, the Second Circuit stated that a violation of equal protection by selective treatment arises if: "(1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair* v. *Saunders*, supra, 627 F.2d 609–10. "[When a plaintiff] does not allege selective treatment based upon his race, religion, or any intentional effort by [the] defendants to punish him for exercising his constitutional rights, [the plaintiff] must demonstrate that [the] defendants maliciously singled [him] out . . . with the intent to injure him." *Crowley* v. *Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996); see also *Thomas* v. *West Haven*, supra, 249 Conn. 393.[40]

Pursuant to the foregoing principles, the plaintiff's claim must fail. The plaintiff cannot demonstrate that the defendants maliciously singled him out with an intent to injure. The trial court found that, at most, the incidents involving the plaintiff and Walters established

---

[40] The plaintiff also raised a claim pursuant to *Willowbrook* v. *Olech*, supra, 528 U.S. 564, which recognizes an equal protection claim brought by a " 'class of one . . . .' " Subsequent to oral argument of this case, however, the United States Supreme Court decided *Engquist* v. *Oregon Dept. of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008), in which it held that class of one claims were inapplicable to public employment.

a bias on the part of Walters that did not rise to the level of malice. Moreover, the mere fact that Walters promoted Pacewicz instead of the plaintiff is insignificant. A demonstration of different treatment from persons similarly situated, without more, does not establish malice or bad faith. *See Zahra* v. *Southold*, supra, 48 F.3d 684 ("evidence suggesting that [plaintiff] was 'treated differently' from others does not, in itself, show malice"), citing *LeClair* v. *Saunders*, supra, 627 F.2d 610–11. Accordingly, we reject the plaintiff's alternate ground of affirmance.

The judgment is reversed with respect to the claims of breach of contract, due process, quo warranto and mandamus and the case is remanded to the trial court with direction to render judgment in favor of the defendants on those claims; the judgment is affirmed in all other respects.

In this opinion NORCOTT and ZARELLA, Js., concurred.

KATZ, J., with whom, VERTEFEUILLE, J., joins, dissenting. The principal issue in this appeal is whether the trial court properly concluded that the 1999–2004 collective bargaining agreement (agreement) between the named defendant, the town of Greenwich (town),[1] and the Silver Shield Association, the union representing the town's police officers (union), required the candidate ranked first on the promotional list to be promoted to the position of police captain, a position outside the bargaining unit. The majority concludes that the provision in the agreement that expressly addresses such promotions only prescribes the class of persons

---

[1] Although the plaintiff, F. Gary Honulik, also named certain town employees as defendants; see footnote 2 of the majority opinion; all of the defendants assert the same claims with respect to this appeal, and I refer to them collectively as the town for purposes of convenience.

eligible for promotions (members of the bargaining unit), not substantive conditions for making such promotions. It further concludes that the past practices clause of the agreement has no bearing on the issue presented because promotions from a position within the bargaining unit to a position outside the bargaining unit is a nonmandatory subject of bargaining. As such, according to the majority, the town was not bound to adhere to long-standing and well understood past practices relating to the procedure for promotions to police captain prior to the removal of that position from the bargaining unit. In my view, the majority fails to give full effect to the provision in the agreement addressing promotions to the position of captain. The terms therein have a meaning that is informed by past practices, under which it is clear that the town contractually was obligated to promote the plaintiff, F. Gary Honulik, to the position of police captain because he was the highest ranked candidate on the promotional list. Moreover, the question of whether promotions from a position *within* the bargaining unit to one *outside* the bargaining unit is a nonmandatory subject of bargaining is irrelevant in light of the fact that the agreement expressly addresses this subject. Accordingly, I would affirm the trial court's judgment.

The trial court and the parties have relied, for varying propositions, on the town's generally applicable rules, policies and procedures for employment decisions, which are set forth in the town's classification and pay plan (pay plan) and personnel policy and procedures manual (policy manual). The parties agree, however, that the effect of the 1999 amendment to the collective bargaining agreement is central to this appeal. Indeed, both the pay plan and policy manual expressly mandate that the terms of a bargaining agreement will supersede contrary terms in those town documents. Greenwich Classification and Pay Plan § 3.2 ("[a]ny inconsistencies

between these rules and procedures and collective bargaining agreements shall be read in favor of the collective bargaining agreements"); Greenwich Personnel Policy and Procedures Manual § 100 ("[t]he policy manual is intended to supplement and should be used in conjunction with the [t]own [c]harter, union agreements, [p]olicy [m]anual, [p]ay [p]lan [r]ules, [f]ederal and [s]tate laws and is not intended to supersede or overrule such agreements or statutes"). Therefore, it is clear that the bargaining agreement has primacy and must be the starting point of our analysis.

"It is axiomatic that a collective bargaining agreement is a contract." *D'Agostino* v. *Housing Authority*, 95 Conn. App. 834, 838, 898 A.2d 228, cert. denied, 280 Conn. 905, 907 A.2d 88 (2006); accord *W.R. Grace & Co.* v. *Local Union 759, International Union of United Rubber, Cork, Linoleum & Plastic Workers of America*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983); *Poole* v. *Waterbury*, 266 Conn. 68, 87, 831 A.2d 211 (2003). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted *in the light of the situation of the parties and the circumstances connected with the transaction*." (Emphasis added; internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 313, 948 A.2d 318 (2008). "In ascertaining intent, we consider not only the language used in the contract but also *the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish*." (Emphasis added; internal quotation marks omitted.) *Barnard* v. *Barnard*, 214 Conn. 99, 109–10, 570 A.2d 690 (1990). Thus, a contract's meaning is contextual. Cf. *Levine* v. *Advest, Inc.*, 244 Conn. 732, 753, 714 A.2d 649 (1998) ("[t]he individual clauses of a contract . . . cannot be construed by taking them out

of context and giving them an interpretation apart from the contract of which they are a part").

To put the provisions of the agreement at issue in their proper context, it is useful at the outset to state what is not in dispute. Prior to 1999, the positions of captain, lieutenant and sergeant were in the bargaining unit controlled by the agreement between the town and the union. At that time, the bargaining agreement did not address promotions expressly but did include a provision entitled "Past Practices Clause," which remained in the agreement after 1999. The past practices clause, set forth in article XXVIII of the agreement, provides in relevant part: "All benefits and obligations which are not described in this [a]greement or in either the [town police] manual or [pay] plan and which are now enjoyed by or required of the employees are specifically included in this [a]greement by reference just as though each such benefit or obligation was specifically set forth." Thus, if promotion on the basis of one's rank on the promotional list was a benefit enjoyed by members of the bargaining unit, that past practice would be protected under the agreement, even though the agreement does not expressly address promotional practices.

The trial court concluded that promotional practices within the bargaining unit were a benefit that fell within the past practices clause; the town does not dispute this interpretation of the agreement.[2] Thus, prior to

---

[2] In its brief to this court, the town relies on labor board decisions that have held that promotions *within* the bargaining unit constitute a mandatory subject of bargaining, whereas promotions from a position within the bargaining unit to one *outside* the bargaining unit constitute a nonmandatory subject of bargaining. It then contends that "[t]he [state labor relations board], construing 'benefits' in a past practices clause, has concluded that 'benefits' are mandatory subjects of bargaining. . . . Thus . . . the past practices clause must be read to apply only to 'benefits' that are mandatory subjects of bargaining. Because promotion to a supervisory position outside the bargaining unit is a nonmandatory subject of bargaining, it is not a 'benefit' preserved by the past practices clause." (Citations omitted.) There-

1999, the past practices provision controlled promotions to the positions of sergeant, lieutenant and captain. The trial court also made the unchallenged factual finding, overwhelmingly supported by the evidence, that "the well established past or prevailing practice within the Greenwich police department of the hiring authority was to fill a vacancy with the top scoring candidate listed in rank order on the promotional list."[3] Indeed, the town's principal witness, Alfred C. Cava, director of human resources for the town, conceded in his testimony before the trial court that, throughout the extended period in which the town engaged in this practice, it had acquiesced to the union's position that promotion within the bargaining unit of the top ranked candidate on the promotional list is a past practice mandated under the agreement.

In 1999, the town and the union agreed to remove the position of police captain from the bargaining unit. This change undoubtedly altered the legal rights of persons who already had attained the position of captain. Once removed from the bargaining unit, the agreement no longer controlled the wages, hours and conditions of employment of captains except to the extent that the parties voluntarily had agreed and provided otherwise. See *Assn. of Civilian Technicians* v. *Federal Labor Relations Authority*, 353 F.3d 46, 50 (D.C. Cir.

fore, the town implicitly concedes that the subject of promotions within the bargaining unit falls within the past practices clause by virtue of its status as a mandatory subject of bargaining. Despite this uncontested point, the majority faults the trial court and this dissent for failing to analyze the contours of the past practices clause and contends that the trial court did not make an explicit finding that rank order promotion was a "benefit" within the meaning of the past practices clause. Unlike the majority, I think this connection is implicit in the trial court's numerous citations to the past practices clause in its analysis and its repeated findings as to the past practice of rank order promotion.

[3] The lone exception to this practice was a situation in which a top ranked candidate for a promotion to captain apparently had agreed to be passed over as part of negotiations to resolve pending disciplinary issues.

2004); *Connecticut Education Assn.* v. *State Board of Labor Relations,* 5 Conn. App. 253, 271, 498 A.2d 102, cert. denied, 197 Conn. 814, 499 A.2d 804 (1985). This appeal turns, however, on whether the agreement, as amended in 1999, altered the rights of those persons whose positions are *still included within the bargaining unit.* Specifically, we must consider whether the trial court properly construed the agreement as "call[ing] for the implementation of the procedure of promoting in rank order from the promotional list" for persons within the bargaining unit, like the plaintiff.

As a result of the parties' agreement to remove the position of captain from the bargaining unit, the parties amended article XXV of the 1999–2004 agreement, entitled "Conditions of Employment," by adding paragraph D, which provides: "Promotion to the classification of [p]olice [c]aptain shall be made from bargaining unit employees who are *candidates certified to the promotional list.*"[4] (Emphasis added.) It is this provision that is at the crux of this appeal. The critical question is whether it evidences an intent to continue the past practice of promoting the top ranked candidate on the promotional list or to alter that practice.[5] Specifically, the question arises as to the meaning of the term "promotional list." Neither the parties, the trial court nor the majority have concluded that the meaning of this term is self-evident. The term is not defined in the agreement, and the agreement does not incorporate by express reference any documents other than the police

[4] There was no evidence admitted to explain the textual differences between the 1999 preliminary agreement and article XXV, paragraph D, of the 1999–2004 bargaining agreement, but the bargaining agreement controls the issue in the present case.

[5] Because the parties expressly included promotions to captain as a "condition of employment" in the agreement, there is no need to determine whether, in the absence of any such express manifestation, the past practices clause alone would require the town to promote in the rank order of the promotional list.

manual. Two sources, however, clarify the meaning of this term as it affects the resolution of the issue before us: past practice specific to the police department and town documents generally applicable to all town employees.

It is well settled that, even in the absence of an express past practice clause, past practices properly may be relied on to illuminate the meaning of a term or provision of a bargaining agreement. See F. Elkouri & E. Elkouri, How Arbitration Works (A. Ruben ed., 6th Ed. 2003) c. 12.1, p. 605 ("[p]roof of custom and past practice may be introduced . . . to indicate the proper interpretation of contract language"); see, e.g., *Black* v. *Surface Transportation Board,* 476 F.3d 409, 414 (6th Cir. 2007); cf. *Anheuser-Busch, Inc.* v. *International Brotherhood of Teamsters, Local No. 744,* 280 F.3d 1133, 1139 (7th Cir.), cert. denied, 537 U.S. 885, 123 S. Ct. 119, 154 L. Ed. 2d 144 (2002). "Indeed, the parties' course of performance may be the best evidence of their intent in using a particular term." *Martinsville Nylon Employees Council Corp.* v. *National Labor Relations Board,* 969 F.2d 1263, 1269 (D.C. Cir. 1992); see also id. (criticizing cramped interpretation of bargaining agreement by labor board and administrative law judge that failed to consider meaning of terms in light of past practice, especially in light of fact that past practice predated agreement). As the trial court properly recognized, although it would be improper to read the agreement to incorporate past practice if such a reading contradicted the express terms of paragraph D of article XXV of the agreement; F. Elkouri & E. Elkouri, supra, c. 12.9, pp. 627–28; neither the majority nor the town has demonstrated that any such conflict arises under the trial court's construction.

It is an undisputed fact, both here and before the trial court, that the long-standing past practice in the police department was to compile and use promotional

lists in a specific, consistent manner. Promotional lists were compiled on the basis of a competitive examination, listing candidates in rank order of their score. Candidates were selected from the promotional lists strictly in rank order. Therefore, the term "promotional list" undoubtedly had a particular meaning "in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, supra, 287 Conn. 313.

Indeed, because promotional lists for sergeant and lieutenant positions, which are positions within the bargaining unit, undoubtedly continued after 1999 to be compiled and used in accordance with the past practice of rank order, the use of the term promotional list in paragraph D of article XXV of the agreement should be presumed to embody a similar meaning. In other words, had the parties intended to depart from past practice of rank order promotion, they presumably would have used a different term than "promotional list" or qualified that term with language indicating that rank order would not be the sole basis for appointment. For example, paragraph D could have provided "the appointing authority may select any candidate on the promotional list, regardless of rank," or "the appointing authority may select from the top three ranked candidates on the promotional list." Compare General Statutes § 5-215a ("The candidate list certified by the commissioner [of administrative services] shall contain the final earned rating of each candidate [for the classified state service]. The appointing authority shall fill the vacant position by selecting any candidate on the candidate list.") and General Statutes § 7-414 ("Such persons [on the eligibility list for classified civil service] shall take rank as candidates upon such register or list in the order of their relative excellence as determined by test, without reference to priority of time of test. . . . The board

shall submit to the appointing power for each promotion the names of not more than three applicants having the highest rating.").[6]

Turning next to the town's rules and policies, the term "promotional list" is defined in the town's pay plan and policy manual.[7] A "promotional list" is defined therein as "[a] list of qualified employees who have passed a promotional examination for a position in the classified service[8] and *ranked on the list in the order of the score received* . . . ." (Emphasis added.) Greenwich Classification and Pay Plan § 4.1.19; Greenwich Personnel Policy and Procedures Manual § 102. Applying that definition to paragraph D of article XXV of the agreement, nothing therein would alter, or be inconsistent with, the meaning of that term as understood in the light of their past practice. Indeed, it appears to make express the past practice.[9] Prior to

---

[6] Section 7-414 embodies what is commonly known as the "rule of three," a practice adopted by many municipalities. See *Kelly* v. *New Haven*, 275 Conn. 580, 587 and nn.9 and 10, 881 A.2d 978 (2005) (citing New Haven city charter and civil service rules); *Hartford* v. *Board of Mediation & Arbitration*, 211 Conn. 7, 10–11, 557 A.2d 1236 (1989) (citing Hartford city charter and personnel rules and regulations); *State ex rel. Barnard* v. *Ambrogio*, 162 Conn. 491, 495 n.2, 294 A.2d 529 (1972) (citing Haddam town charter).

[7] The term "promotional list" is not actually used in the section of either the policy manual or the pay plan that encompasses the subject of promotions. The definitions, of course, could not, in and of themselves, prescribe substantive rights. Cf. 1A J. Sutherland, Statutory Construction (6th Ed. Singer 2002) § 27.1; *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 70, 689 A.2d 1097 (1997); *Toll Gate Farms, Inc.* v. *Milk Regulation Board*, 148 Conn. 341, 342–43, 170 A.2d 883 (1961).

[8] A classified position is one filled by way of a competitive examination process; Greenwich Classification and Pay Plan § 4.1.8; whereas an unclassified position is excluded from the merit testing policies because of the nature of the authority and responsibilities exercised. Id., § 4.1.14. Although the town recently changed the position of police chief to unclassified, during the period relevant to this appeal, all positions in the police department were classified.

[9] The significance of rank order is underscored in other provisions in the policy manual, suggesting that rank order may in fact be intended to operate as a constraint on filling promotions. The policy manual sets forth a proce-

the 1999 amendment of the agreement, the position of captain had been filled exclusively by persons within the bargaining unit. Similarly, under that past practice, bargaining unit members eligible for promotion had been certified to a promotional list, meaning they had been ranked high enough, on the basis of a competitive examination, to be deemed eligible for promotion.

In light of the history of the past practices clause of the agreement and the language in paragraph D of article XXV of the agreement that is entirely consistent with past practices, I would conclude that the agreement unambiguously requires the town to continue its past practices for promotions to captain. Quite simply, the agreement controls until a bargaining unit member is promoted to the rank of captain; once appointed to that position outside the bargaining unit, the agreement no longer controls.

The majority reaches a contrary conclusion on the basis of two fundamentally flawed propositions relating to paragraph D of article XXV of the agreement and the past practices clause. First, it determines that a noncontextual and selective reading of paragraph D must apply. The majority reads this provision as if there was no history between the parties that would have given particular meaning to the terms they used. It presumes that the parties were writing on a blank slate

dure for breaking tie scores, and that procedure relates to the merits of the examination rather than nonmerit based criteria. See Greenwich Personnel Policy and Procedures Manual § 402.1 ("[w]henever identical grades are received, such names shall be arranged in order of relative rating given in the most heavily weighed part of the examination"). It also requires notification to employees of their "final grade *and relative standing* on the employment list . . . immediately after the certification of the employment list to the appointing authority." (Emphasis added.) Id. We need not, in the present case, however, determine whether the town generally has committed to fill promotions in rank order. The question before us is the intent of the parties to the bargaining agreement at issue, specifically, what meaning they attached to the term "promotional list."

when drafting that provision, unencumbered by and unaware of the fact that the police department had used "promotional lists" in a specific manner for many years—promoting candidates in the order of their rank on the promotional list, without exception. Although the majority faults the dissent for looking to past practice to illuminate the meaning of paragraph D, it implicitly acknowledges the ambiguity therein by its resort to the definitional section of the pay plan. The majority then determines that this definition renders paragraph D unambiguous, however, by conveniently omitting from its analysis the portion of that definition that is consistent with the past practice—"ranked on the list in order of the score received . . . ." Greenwich Classification and Pay Plan § 4.1.19; Greenwich Personnel Policy and Procedures Manual § 102. The majority thereby implicitly concludes that this phrase has no meaning, or at least no intended effect, contrary to the rule that we do not read contracts to render terms superfluous.[10] See *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 12–13, 942 A.2d 334 (2008); *American Promotional Events, Inc.* v. *Blumenthal*, 285 Conn. 192, 203, 937 A.2d 1184 (2008).

It defies logic that the parties would have incorporated a term that had a particular meaning under well established past practice, which previously was an

---

[10] The majority gives substantive effect to the part of paragraph D of article XXV of the agreement that requires candidates to be "certified" to the promotional list and the counterpart in § 4.1.19 of the pay plan and § 102 of the policy manual that requires a qualified employee to have "passed a promotional examination . . . ." The majority fails, however, to ascribe any substantive meaning to, or even acknowledge, the portion of the definition that requires candidates to be "ranked on the list in the order of the score received . . . ." Greenwich Classification and Pay Plan § 4.1.19; Greenwich Personnel Policy and Procedures Manual § 102. Under the majority's view, despite the clear meaning that rank order had with respect to promotional lists in the police department, it would not be a substantive violation of the agreement for the town to compile a promotional list in alphabetical order of those candidates who passed the promotional examination.

implied term of the agreement under the past practice clause and was defined in the town's policies in a manner consistent with that practice, if their intent was to change past practice. If that had been their intention, it is reasonable to assume that they either would have provided for a different promotional procedure for captains than the one previously adhered to (discretion rather than rank order)[11] or would have expressly disavowed past practice. See, e.g., *Truck Drivers Local No. 164* v. *Allied Waste Systems, Inc.*, 512 F.3d 211, 214 (6th Cir. 2008) (citing clause in bargaining agreement "which [provides] that the terms of the enacted agreement 'shall supersede and render ineffective any past practices, addendum, letters of understanding, oral or written agreement as may now exist or as may have existed' "); *Michigan Family Resources, Inc.* v. *Service Employees International Union Local 517M*, 475 F.3d 746, 749 (6th Cir.) (citing clause in bargaining agreement providing that " '[t]here are no past practices which are binding upon the parties' "), cert. denied, 551 U.S. 1132, 127 S. Ct. 2996, 168 L. Ed. 2d 704 (2007); *Gannett Rochester Newspapers* v. *National Labor Relations Board*, 988 F.2d 198, 199 (D.C. Cir. 1993) (citing clause of collective bargaining agreement providing that contract "supersedes all prior agreements, commitments, and practices, whether oral or written between the [c]ompany and the [u]nion, or the [c]ompany and any covered employee or employees" [internal quotation marks omitted]). The town's failure to add terms to negate the past practices clause while expressly reaffirming procedures consistent with past practice was, in effect, an agreement to retain the status quo regarding promotions to the rank of captain.[12] To the extent that the town

---

[11] Indeed, testimony suggested that, at some point, the town had amended paragraph F of article XXV of the agreement to alter past practice with respect to the timing for certain promotional examinations not pertinent to this appeal.

[12] In its brief to this court, the town contends that, applying the maxim "inclusio unius est exclusio alterius," we must read the express inclusion

may have harbored a subjective view of the meaning of paragraph D of article XXV of the agreement that was contrary to past practice, I would agree with the trial court that the town was obligated to make that intention clear.[13] See *Garrison* v. *Garrison*, 190 Conn. 173, 175,

in paragraph D of article XXV of the agreement of *who* is eligible for promotion as excluding *how* promotions shall be made. I disagree that this maxim is applicable. Although that maxim might have some force if this provision set forth a list of similar or related terms that appeared exclusive, that is not the case here. See F. Elkouri & E. Elkouri, supra, c. 9.3.A.xi, pp. 467–68 (explaining limitations on application of this doctrine); id., p. 622 (general clause preserving past practice would not require employer to continue past practice of designating day before Christmas as paid holiday when contract specifically listed paid holidays and did not include day before Christmas); see also *Cahill* v. *Board of Education*, 187 Conn. 94, 107, 444 A.2d 907 (1982) (*Shea, J.*, concurring) ("the maxim inclusio unius, exclusio alterius is merely an aid to construction and not a rule of law having universal application").

[13] In its memorandum of decision, the trial court repeatedly emphasized that "the [town] specifically and unequivocally declined to negotiate a specific provision regarding the manner of testing and selecting a person promoted to the rank of [p]olice [c]aptain; and that therefore, the [agreement] calls for the implementation of the procedure of promoting in rank order from the promotional list and not according to the '[r]ule of the [l]ist,' so called." I note that Cava, director of human resources for the town, offered the following testimony on the express representations made by the town during negotiations relating to the change in the status of captains:

"[The Plaintiff's Counsel]: You did discuss with the union during the time the captain's position went out of the bargaining unit, the fact that it was on the table and discussed, that the impact of that would be that the bargaining unit could no longer negotiate for the wages or the benefits, or those type of things for the captains, correct?

"[Cava]: Correct. . . .

"[The Town's Counsel]: You said that you chose not to address the issue of a promotional process with the union, correct?

"[Cava]: Correct.

"[The Town's Counsel]: Did the union indicate to you that it wanted to discuss the promotional process for captains?

"[Cava]: Well, they initially raised a number of those issues. And I chose not to discuss it with them. That was my initial position. They were outside the bargaining unit and I wouldn't have any discussion with them over it. Subsequently, I learned that their real interest was they were concerned that the town may go outside of the department and hire outside people into the position of captain, so we acquiesced and that was never our intent. And we acquiesced to the language that's now in the [agreement] that the

460 A.2d 945 (1983) ("[t]he making of a contract does not depend upon the secret intention of a party . . . but upon the intention manifested by his [or her] words or acts, and on these the other party has a right to proceed" [internal quotation marks omitted]).

Second, the majority concludes that a distinction in labor law between mandatory and nonmandatory subjects of bargaining is dispositive, when that distinction has no bearing on the question before this court. The majority cites cases holding that the subject of promotions *within* the bargaining unit are mandatory subjects of bargaining, whereas the subject of promotions from a position within the bargaining unit to one *outside* the bargaining unit is a nonmandatory, or permissive, subject of bargaining. Accordingly, because promotions to police captain would have become a nonmandatory subject of bargaining once that position was removed from the bargaining unit, the majority posits that the town could not be compelled to adhere to its past practices for promotions to police captain. Although I would agree that the weight of authority, albeit quite limited, holds that promotions to a position outside the bargaining unit is a nonmandatory subject of bargaining,[14]

promotions would continue to come from within the department.

"[The Town's Counsel]: So you never specifically discussed the promotional process even though the union had indicated that it wished to do that?

"[Cava]: Never discussed it."

[14] There is not, however, universal consensus on this question. See *Local 1383 of the International Assn. of Fire Fighters* v. *Warren*, 411 Mich. 642, 653 n.2, 311 N.W.2d 702 (1981) ("[p]romotions are such an important topic of employment relations that even promotions out of a bargaining unit are mandatory subjects [of bargaining]"); *Detroit Police Officers Assn.* v. *Detroit*, 61 Mich. App. 487, 492–94, 233 N.W.2d 49 (1975) (explaining and applying principle subsequently cited by Michigan Supreme Court in *Local 1383 of the International Assn. of Fire Fighters*); see also *Manistee* v. *Manistee Fire Fighters Assn., Local 645, IAFF*, 174 Mich. App. 118, 121–22, 435 N.W.2d 778 (1989) ("What constitutes a mandatory subject is determined on a case-by-case basis. [*Detroit Police Officers Assn.* v. *Detroit*, supra, 490–91]. The test generally applied is whether the matter has a significant impact upon wages, hours, or other conditions of employment, or settles an aspect of the employer-employee relationship." [Internal quotation marks

this distinction is a red herring under the facts of this case.

It is well established that parties may agree to include a nonmandatory subject in a bargaining agreement, and, if they do so, a breach of contract action will lie for a violation of such a term. See *Danbury* v. *International Assn. of Firefighters, Local 801*, 221 Conn. 244, 253, 603 A.2d 393 (1992) ("The duty to negotiate is limited to mandatory subjects of bargaining. As to other matters, however, each party is free to bargain or not to bargain. . . . To the extent that such permissive bargaining results in an accord between the parties, their agreement may be incorporated into a binding contract . . . ." [Internal quotation marks omitted.]); *First National Maintenance Corp.* v. *National Labor Relations Board*, 452 U.S. 666, 675 n.13, 101 S. Ct. 2573, 69 L. Ed. 2d 318 (1981) (parties are free to negotiate in good faith nonmandatory subject of bargaining but may not insist on it to point of impasse); *Allied Chemical &*

omitted.]). I would not conclude, as it appears the majority has, that promotions from a position within the bargaining unit to one outside the bargaining unit would be a nonmandatory subject of bargaining in every case. Indeed, the majority's deference to two state board decisions reaching such a conclusion on the basis of the rule that we afford deference to "time tested" agency interpretations is puzzling given that: (1) this rule applies to formal interpretations of *statutory* terms; see *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 404, 944 A.2d 925 (2008) ("[w]e traditionally have accorded deference to the time-tested interpretation of an agency charged with enforcing the provisions of a statute, provided that the agency's interpretation has been formally articulated and applied for an extended period of time, and that interpretation is reasonable" [internal quotation marks omitted]); and (2) this court expressly has rejected two agency decisions as being sufficiently numerous to satisfy that standard. See *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008); *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603 n.9, 893 A.2d 431 (2006). To the extent necessary to resolve the issue in the present case, I would assume, without deciding, that such promotions are a nonmandatory subject of bargaining because of the posture of this case, in that the plaintiff concedes in his brief to this court that paragraph D of article XXV of the agreement addresses a nonmandatory subject of bargaining in order to pursue his independent breach of contract action.

*Alkali Workers of America* v. *Pittsburgh Plate Glass Co.*, 404 U.S. 157, 187–88, 92 S. Ct. 383, 30 L. Ed. 2d 341 (1971) ("By once bargaining and agreeing on a permissive subject, the parties, naturally, do not make the subject a mandatory topic of future bargaining. . . . The remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract . . . not in an unfair-labor-practice proceeding." [Citation omitted.]); see also *Lid Electric, Inc.* v. *International Brotherhood of Electrical Workers, Local 134*, 362 F.3d 940, 943 (7th Cir. 2004) ("Labor law permits collective bargaining agreements to reach beyond the certified unit of workers. How employers treat non-unit workers is a permissive subject of bargaining. Neither union nor employer is required to negotiate about permissive subjects [that is what it means to call them 'permissive' rather than 'mandatory'] . . . but they can do so when they find it mutually beneficial." [Citation omitted.]).

Paragraph D of article XXV of the agreement is clear evidence that the town did bargain on the subject of promotions to police captain and agreed to included terms consistent with past practice. Thus, the distinction that the majority and the town draw between mandatory and nonmandatory subjects of bargaining as it bears on whether the town *could* be compelled to bargain on this matter or could unilaterally alter a past practice that was *not* protected expressly in the agreement is irrelevant. Moreover, neither the majority nor the town has pointed to any case law that requires us to eschew basic principles of contract interpretation, under which we determine the parties' intent in light of their situation and the circumstances of the transaction, when a nonmandatory subject of bargaining has been included in an agreement.[15]

---

[15] Although a past practice may no longer be binding if the underlying conditions on which the practice was based have changed; F. Elkouri & E. Elkouri, supra, c. 12.6, p. 618; that rule would not apply in this case for two

In sum, the parties previously had agreed to include a past practices clause in the bargaining agreement. Promotions made strictly on the basis of rank order on the promotional list had been the established past practice. The parties thereafter agreed to remove the position of captain from the bargaining unit, but to add paragraph D to article XXV of the agreement to address the procedure for promotions to captain. That paragraph simply restates the past practice. Indeed, in light of the numerous ways that the agreement could have reflected a clear intention to break from past practice, I question how the majority can fail, at the very least, to conclude that the agreement is ambiguous as to the question before us.[16] Therefore, I would determine that

reasons: (1) the past practice has been made an express term of the contract; id.; and (2) there is no evidence that the status of the position at issue in the promotion as within or outside of the bargaining unit was a "condition" on which the practice of rank order promotion was instituted and maintained.

[16] To the extent that one still could view the agreement as ambiguous after considering the undisputed past practice, the evidence before the trial court did not reflect that the parties' conduct subsequent to the 1999 amendment manifested a clear intent to alter the existing practice. Significantly, within months after agreeing to remove the position of captain from the bargaining unit, promotions were made to fill two police captain openings. Peter Robbins, the police chief who filled those promotions, testified that he believed that he was required to promote in rank order of the promotional list, as the police department always had done in the past, and that no one had told him anything to the contrary. As a result, Robbins promoted the top two ranked persons on the promotional list. It seems extraordinary that the appropriate town officials never communicated to Robbins, the appointing authority, that there had been a change in the promotional process such that he now had complete discretion to hire anyone on the promotional list. See *Jaasma* v. *Shell Oil Co.*, 412 F.3d 501, 508 (3d Cir. 2005) (subsequent conduct relevant to construe ambiguity in agreement); *Sure-Trip, Inc.* v. *Westinghouse Engineering & Instrumentation Services Division*, 47 F.3d 526, 534 (2d Cir. 1995) (same); *Federal Ins. Co.* v. *Scarsella Bros., Inc.*, 931 F.2d 599, 603 (9th Cir. 1991) (same). Moreover, the announcement for those positions contained nothing that would have indicated to eligible officers that the practice regarding the promotional procedure had changed. The only manifestation to the contrary was in a letter from the town's deputy director of human resources, which apparently was sent to only those two top ranked candidates who thereafter were

the trial court properly concluded that the town had breached the contract by failing to promote the plaintiff, who was ranked first on the promotional list.

Accordingly, I respectfully dissent.[17]

promoted. That letter provided in relevant part: "Under the [r]ules and [r]egulations of the Greenwich [p]ay [p]lan, a [d]epartment [h]ead may hire any candidate certified as eligible by the [h]uman [r]esources [d]epartment. Your name has been forwarded to the hiring authority for consideration for appointment to this position." Honulik received a similar, generically phrased letter in 2003. Under such circumstances, if resort to subsequent conduct was necessary because the agreement was ambiguous after consulting past practice and applicable town documents, a finding by the trial court that the ambiguity in the agreement should be read as retaining the status quo would not be clearly erroneous. See *Bristol* v. *Ocean State Job Lot Stores of Connecticut, Inc.*, 284 Conn. 1, 7, 931 A.2d 837 (2007) (noting that, if contract is determined to be ambiguous, finding of intent is factual question reversed only if clearly erroneous).

[17] In light of the urgency to resolve this expedited public interest appeal as expeditiously as possible, I do not address the remaining arguments of the parties. See General Statutes § 52-265a (direct appeal on questions involving public interest authorized in case "in which delay may work a substantial injustice").